### UNITED STATES v. KLOCK et al.
#### Cr. No. 30845.

United States District Court
N. D. New York.

Sept. 27, 1951.

Edmund Port, U. S. Atty. Northern District of New York, Syracuse, N. Y., (Robert J. Leamy Asst. U. S. Atty., Oneonta, N. Y., of counsel), for the United States.

Averbach & Bonney, Seneca Falls, N. Y. (Albert Averbach, Seneca Falls, N. Y., and William W. Barron, Washington, D. C., of counsel), for defendants.

FOLEY, District Judge.

The defendant Titus by proper motion seeks to dismiss sixteen substantive counts and one conspiracy count, entitled Count XVII, contained in a single indictment found against him and two other defendants, Klock and Root. The challenge by defendant Titus alone to Counts I through XVI of the indictment, inclusive, is based upon three contentions: (1) that the court is without jurisdiction; (2) the indictment does not state facts sufficient to constitute an offense against the United States; (3) the indictment was not filed within three years next after the alleged offenses were committed. The attack against the conspiracy count, Count XVII, is generally similar. In three separate motions filed simultaneously, the defendant Titus also moves for a bill of particulars, discovery and inspection, and for relief from prejudicial joinder under the appropriate rules of the Federal Rules of Criminal Procedure, 18 U.S.C. It is evident that the motion for dismissal as to the separate counts of the indictment is the important one to resolve, but the discussion herein shall cover and is intended as a disposition of all the motions.

The sixteen counts of the indictment are similar in their accusations. Each count charges a wrongful and unlawful misapplication of the moneys, funds and credits of the Syracuse Trust Company by Klock, employed by the said bank as bookkeeper, with intent to injure and defraud said bank. The alleged method of misapplication by Klock is set forth similarly in each count in precise detail, and the payee, maker, date and amount of each check charged in the separate sixteen counts to have been drawn upon a stated account containing insufficient funds are set forth as part of the circumstances surrounding and relating to each claimed statutory violation. Each of these counts charge that the described checks were signed by Paul Titus as maker and drawn upon the account of Paul and/or Ann Titus in said bank. The dates of the incidents, alleged with sufficient particularity, run from January 1950 to March 1951 in these counts. Upon these direct charges of criminal responsibility on the part of Klock in his actions as a bank employee, a specific charge in each count is laid against the defendant Titus that in each separate instance he did unlawfully, wilfully and wrongfully and with intent to injure and defraud the bank, aid and abet Klock in his alleged wrongdoing. The criminal charge against Titus in these counts is solely and only aiding and abetting Klock. No more and no less. The violations of law, as is customary, are listed at the end of each count as violations of Section 656 and 2, Title 18 U.S.C.A.

The main contention of Titus grows from the revision of the United States criminal statutes in 1948 and is directed against the omission of certain language in the breaking down of the voluminous Section 592 of Title 12 U.S.C., 1940 Ed. and incorporating important parts of it in the new revised section 656, Title 18 U.S.C., C. 645, 62 Stat. 729, which became effective September 1, 1948. The material words not carried over into Section 656 by the revision, or to other related provisions recreated from Section 592, were specific in including therein " * * * every person who, with like intent, aids or abets any officer, director, agent, employee or receiver in any violation of this section shall be guilty of a misdemeanor * * * ". Importance is attached to this omission in behalf of the defendant Titus because at the time of the legal existence of Section 592 there was the usual provision for aiding and abetting responsibility in Section 550, Title 18 U.S.C., the predecessor in part of Section 2, Title 18 U.S.C., the new general provision in such situations. It is argued that because the new section, 656, by its terms does not explain such omission, nor does such explanation exist in the Reviser's Note to such section, either as to the reason for the omission nor a reference to the provisions of aiding and abetting under Section 2 as covering the situation, then the conclusion is warranted that the Congress, and the Revisers in their important aid to the Congress, by this negative manner intended the startling consequence which would grant inviolability and immunity to persons sought to

be charged as an aider and abettor to this particular statutory violation. It is a tortuous road of reasoning and, in my judgment, a simple study of the necessity, background, spirit, purpose and function of the revision in 1948 of Title 18 discloses an intent exactly opposite to the contention made in this respect. This scattering and specious argument, it appears to me, is absolutely contrary to the intent of the Congress and the expressions of the revisers in effecting generally this important revision of existing law.

■ As stated recently in Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 394, 71 S.Ct. 745, 750, "It is the sponsors that we look to when the meaning of the statutory words is in doubt", then again in the dissenting opinion, Mr. Justice Frankfurter, 341 U.S. at pages 399, 400, 71 S.Ct. at page 753, same case, "It has never been questioned in this Court that committee reports, as well as statements by those in charge of a bill or of a report, are authorative elucidations of the scope of a measure." Oddly enough, an important sponsor of the revision of Title 18, William W. Barron, Chief Reviser, is counsel to the attorneys of record for the defendant Titus. A scrutiny of his statements, the notes of the revisers compiled under his supervision, and his writings, is necessary. It is unquestioned that he and his associates performed a monumental task in guiding this important revision and putting into intelligible, concise form the important statutory enactments relating to crimes and criminal procedure.

In his statement to the House Committee on Revision of the Laws, at a hearing held December 6, 1944, Mr. Barron, speaking as Chief Reviser, was asked by the Chairman as to whether or not the reviser's notes would set forth clearly the substantive changes in the law. It was the answer of Mr. Barron in this respect that, "Every substantive change, no matter how minor, is fully explained so that if you in your discretion see fit to make these notes part of your report, they will adequately serve to interpret every proposed change." Title 18 U.S.C., 1948 Ed., Cong.Serv. p. 2672.

■ As indicated previously, the Reviser's Note to Section 656, Title 18 U.S.C., makes not the scantiest reference to the purpose in the omission of the previous aiding and abetting language. The Reviser's Note to such section does state in its second paragraph that, "The revised section without changing in any way the meaning or substance of existing law, clarifies, condenses, and combines related provisions largely rewritten in matters of style." These plain, simple statements must mean what they say. It seems incongruous that the Congress and the revisers in assisting them in its studied research would work out such drastic change of policy as urged by the defendant herein in relation to criminal liability in such haphazard and inconsequential manner.

To me the omission is in direct accord with the purposes of simplicity, clarity and brevity mainly sought in the revision. In the same statement to the House Committee, Title 18, U.S.C., 1948 Ed., Cong. Serv. at page 2667, Mr. Barron said, "For example, by inserting the word 'causes' in the definition of 'principals' we found we could omit that word together with such expressions as *aids or abets* and 'causes or procures' from *many other sections.*" (Italics mine.) This statement was included verbatim in the Committee Report to the House of Representatives, H.R. 304, Title 18 U.S.C., 1948 Ed., Cong.Serv. page 2441. In my judgment, such statements are a full explanation for the deletion of the aiding and abetting words in the new Section 656.

In an appendix to an article by Mr. Barron on the "Construction of Statutory Revisions", 8 F.R.D. 439, at pages 446, 447, there are important authorities collated as to the approach of the courts in such construction. These authorities fit the situation herein very well and give overwhelming resistance to the position of the defendant in this particular phase of his argument.

The aiding and abetting provision in the law has long been with us. In United States v. Peoni, 2 Cir., 100 F.2d 401, Judge Learned Hand, in his eloquent manner, reviews the history of these enactments.

His definition in the Peoni case was adopted in Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919, "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' "

Then, again recently in United States v. Chiarella, 2 Cir., 184 F.2d 903, Judge Hand referred to subdivision (b) of Section 2, Title 18 U.S.C., as "baffling language." However, there is no challenge whatsoever to the first sentence of Section 2, marked "(a)" except to say that this sentence has always been substantially the same.

■ It is my conclusion in this respect that the first sixteen counts are adequately based upon sufficient statutory foundation and meet the challenge of dismissal based upon lack of jurisdiction in the court and insufficient statement of facts to constitute an offense against the United States. The remaining objection that the indictment was not filed within three years after the alleged offenses were committed is clearly without merit inasmuch as these particular counts are based upon alleged happenings beginning in 1950.

The part of the motion addressed to the conspiracy count, Count XVII, is based mainly upon the reasoning in United States v. Zeuli, 2 Cir., 137 F.2d 845. That decision, of course, rests upon its own peculiar facts as disclosed upon the trial. It is interesting to note that much of the reasoning on the conspiracy issue was based upon difficulty in proof and not in the indictment. It does not seem conclusive in this present test of the conspiracy count herein. The decision of reversal in the Zeuli case was concluded mainly upon the question of proper venue. In the conspiracy count here it is charged that the three defendants named, Klock, Root, and Titus, unlawfully conspired and agreed for the unlawful purposes of misapplication, together with the making of false entries, to injure, defraud and deceive. By its broad and detailed charge of conspiracy, it

charges agreement specifically, includes the activities of three persons, and adds the allegation of false entries to the misapplications charged in the substantive counts. It sufficiently avoids the exception that a conspiracy charge may not be added to the substantive charge where the agreement of two persons is necessary for the completion of the substantive crime, and there is no ingredient in the conspiracy which is not present in the substantive crime. Pinkerton v. United States, 328 U.S. 640, 643 66 S.Ct. 1180, 1182, 90 L.Ed. 1489.

■ As stated in that authority, "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses."

■ The count involved sufficiently charges an unlawful agreement to do unlawful acts and must be upheld as a proper separate charge in the indictment. The challenge to the conspiracy count in relation to the statute of limitations is untenable in the law inasmuch as the overt acts charged are within the period of the statute. See Merrill v. United States, 5 Cir., 40 F.2d 315, 316.

■ The motion for the detailed particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure discloses an obvious attempt to launch a full-rigged "fishing expedition" into the evidence of the government. Such purpose is not allowable within the Federal Rules no matter how liberal their intendment.

A review of the legal principles in such applications generally and also as related to "aiding and abetting" details is found in United States v. Steinberg, D.C., 48 F. Supp. 182. The judicial position as to particulars of the conspiracy count is adequately reviewed in United States v. Lang, D.C., 40 F.Supp. 414.

As I have stated previously, the indictment here is plain, definite, concise, and detailed in the facts constituting the offenses charged as prescribed by the Federal Rules of Criminal Procedure. However, because of the intricacy of the charges made, it seems fair and just to permit some disclosure in order to insure

to the defendant sufficient information to properly prepare his defense. Many of the requests are repetitious, and particulars shall be filed and the motion is granted only as to the requests contained in items 2, 6, 7, 8 and 14 set forth in this particular notice of motion. In accordance with the fear expressed by the prosecution because the investigation is continuing, the order to be submitted in this respect shall specifically provide that the government shall not be limited in its proof as to the particulars hereby furnished.

The motion for discovery and inspection is not sufficiently supported to grant the relief requested under the terms of Rule 16 of the Federal Rules of Criminal Procedure. It is too indefinite and comprehensive, fails to show necessity and materiality of the numerous documents sought, and does not controvert the denial of the government that any such documents are in its possession by seizure or by process. See United States v. Chandler, D.C., 7 F.R.D. 365. Proper inspection of material documents should, if possible, be agreed upon and arranged for by the government and the defendant Titus. Otherwise, the motion is denied without prejudice to its proper renewal.

The motion for relief from prejudicial joinder seems premature if it is directed against the severance of trial with other defendants outside the ones named in the single indictment discussed herein. There has been no application by the prosecution to consolidate this indictment with any other for trial. If that be the purpose of the motion, it is denied without prejudice to proper renewal. If the motion herein is directed against the severance of Titus from trial with Klock and Root, it is denied because of its obvious impractical result and unwarranted burden of expense upon the prosecution.

To summarize, the motion to dismiss is denied; the motion for a bill of particulars is granted to the limited extent indicated; the motion for discovery and inspection is denied without prejudice to proper renewal; the motion for relief from prejudicial joinder is denied to the extent indicated.