**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jimmy W. FARRELL,
Defendant-Appellant.**

**No. 79–5175.**

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1980.

---

J. Richard Young, Asst. Federal Public Defender, Atlanta, Ga., for defendant-appellant.

Andrew J. Ekonomou, Robert A. Boas, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

RONEY, Circuit Judge:

Jimmy W. Farrell argues on appeal that there was insufficient evidence to support a jury conviction for misapplication of bank funds. Resisting the Government's invitation to affirm on the concurrent sentence doctrine, Farrell having received a sentence for these transgressions to be served concurrently with that received for other unappealed convictions, we affirm.

Farrell was convicted on three counts of receiving a fee for endeavoring to procure a bank loan, 18 U.S.C.A. § 215, and three counts of willful misapplication of bank funds, 18 U.S.C.A. § 656. The district court sentenced Farrell to one year imprisonment for each § 215 count and two years imprisonment for each § 656 count, all sentences to be served concurrently. The sentences were suspended, however, and Farrell was granted a three year probation term conditioned on payment of a fine and his residence at a treatment center for one month. On appeal, Farrell challenges only his convictions on the § 656 counts.

The Government argues that because the terms of imprisonment on the uncontested § 215 counts are to be served concurrently with those on the § 656 counts, this Court should apply the concurrent sentence doctrine to preclude review of Farrell's convictions on the § 656 counts.

■ This is clearly an inappropriate case for application of the concurrent sentence doctrine. Violation of § 215 is only a misdemeanor offense, so conviction on those counts does not precipitate the curtailment of civil rights resulting from conviction under § 656, a felony offense. See 18 U.S.C.A. § 1. Moreover, although all his sentences are to run concurrently, Farrell was sentenced to two years imprisonment on each § 656 count, and only one year on each § 215 count. In the event his probation is revoked, Farrell would be penalized more severely for the § 656 convictions, which we must now review, than for the § 215 convictions. Clearly "there is a significant likelihood that the defendant will suffer adverse collateral consequences from the unreviewed conviction[s]." *United States v. Rubin*, 591 F.2d 278, 280 (5th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979).

■ The Government must prove four elements to establish a violation of § 656: (1) that the accused was an officer, director, agent or employee of a bank; (2) that the bank was in some way connected with a national or federally insured bank; (3) that the accused willfully misapplied the monies or funds of the bank; and (4) that the accused acted with intent to injure or defraud the bank. *United States v. Salinas*, 601 F.2d 1279, 1287 n. 15 (5th Cir. 1979); *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). As a collector of installment loans for the Trust Company Bank in Atlanta, Farrell concedes he was an employee of a federally insured bank, so the first two elements are not in controversy. He contends, however, that the money he received was not bank funds and he had no intent to injure or defraud the bank.

Farrell devised a scheme for profiting from the bank's loans to three used car purchasers. Here is how the scheme worked.

Farrell had two cars for sale, his friend William McMillan one. They agreed that McMillan would display the cars on the grounds of his salvage company and arrange sales with prospective purchasers. Farrell offered to pay a loan officer at the bank for speedy approval of loan applications submitted by prospective purchasers of the three cars. The procedure followed was similar for each sale.

After agreement was reached on a purchase price, McMillan assisted the purchaser by filling out a loan application with information provided by the purchaser. The purchaser signed the application with the loan amount left blank. Farrell then submitted the application to the loan officer.

After determining the maximum amount of loan available for the car, Farrell directed the loan officer to fill out a specific amount for the loan, which in each case exceeded the agreed purchase price of the car. The loan officer then drew a treasurer's check on the bank's account in the amount of the approved loan, and the check was negotiated for cash by either Farrell or McMillan. Each borrower denied having endorsed the loan proceeds check. The proceeds were divided among McMillan, Farrell and the loan officer. Each loan applicant received his car, but none received the cash proceeds of his loan even though that amount exceeded the purchase price of the car. On a $600 purchase of McMillan's car, a loan of $1200 was made. Farrell kept $200 and gave $200 to the loan officer and the balance to McMillan. On a $1725 purchase of Farrell's car, a loan of $2300 was made. Farrell gave $200 to the loan officer and $350 or $375 to McMillan, and kept the balance himself. On an $800 purchase of the other Farrell car, a loan of $1000 was made. Farrell gave $200 to Miller and $200 to McMillan, and kept the balance himself.

Farrell contends the cash he received was not bank funds but rather "the proceeds of an automobile sale." Accordingly, he concludes that the subsequent distribution of cash to his partners and himself was not misapplication within the proscription of § 656, element (3) of the proof required.

■ The response to this argument is twofold. First, Farrell's direction of and collusion with the loan officer in the approval and execution of loans in amounts which exceeded the purchase prices of the cars involved resulted in a criminal misapplication of bank funds even before Farrell acquired cash from the loans. The excess amounts of the loans had the effect of diverting bank funds from their intended purposes, and therefore the mere approval of the loans at Farrell's instigation was a misapplication. The statute does not require that cash actually leave the bank before a violation occurs. *See United States v. Rickert*, 459 F.2d 352, 354–55 (5th Cir. 1972).

In *United States v. Foster*, 566 F.2d 1045 (6th Cir. 1977), *cert. denied*, 435 U.S. 917, 98 S.Ct. 1473, 55 L.Ed.2d 509 (1978), defendants who were not bank officers were charged with aiding and abetting § 656 violations by bank officers who approved loans for defendants' benefit in amounts greater than required for the purposes of the loans, receiving kickbacks in exchange. Responding to the argument that the evidence did not establish a violation of § 656, the court held that the officers' approval of loans larger than necessary because they included amounts for kickbacks evidenced a violation of § 656. 566 F.2d at 1050. The same reasoning is applicable to Farrell's conduct in this case.

■ Second, Farrell's argument that he misapplied not bank funds but rather the proceeds of a car sale also founders because the statute prohibits the willful misapplication of "any of the moneys . . . intrusted . . . to the custody or care of any such . . . employee . . . ." Proceeds of the loans involved here were in the "custody or care" of Farrell as a bank employee from the time he received a treasurer's check from the loan officer until he distributed the cash obtained therefrom, even though the bank had a security interest in the cars. *See United States v. Rickert*, 459 F.2d at 354 ("It is not necessary that the misapplied sums be bank property."). The distribution of those proceeds was a willful misapplication of bank funds within the scope of § 656.

Farrell also contends the evidence was insufficient to prove element (4), that he acted with an intent to injure or defraud the bank. He relies primarily on *United States v. Gens*, 493 F.2d 216 (1st Cir. 1974). Defendant Gens was a bank director who colluded with several bank officers to secure loans to friends of his, knowing that

the funds thus obtained would then be transferred to him by those friends to assist the financing of his nursing home business.

The court reversed Gens' convictions, holding that the Government had failed to prove that his actions had a "natural tendency to injure or defraud the bank." 493 F.2d at 222. Because the bank had merely made loans to financially capable parties cognizant of their responsibility to repay the loans, their subsequent loans of the same funds to Gens did not turn legitimate transactions into misapplications of bank funds.

This case is distinguishable from *Gens.* There the borrowers fully understood the repayment obligations they had assumed. Here, not knowing that the loans were larger than the purchase prices of the cars, the borrowers could not have had a full understanding of their repayment obligations.

In this Circuit, the intent to injure or defraud the bank "is proven by showing a knowing, voluntary act by the defendant, the natural tendency of which may have been to injure the bank even though such may not have been his motive." *United States v. Southers*, 583 F.2d 1302, 1305 (5th Cir. 1978). The deception of the borrower and the bank here had a natural tendency to injure the bank. *Cf. United States v. Twiford*, 600 F.2d 1339, 1341 (10th Cir. 1979) (misapplication occurred when bank officer received benefits, as kickbacks, of loans while concealing his interest from the bank). The natural tendency of Farrell's actions was to undermine the collectibility of the loans. *See United States v. Welliver*, 601 F.2d 203, 208 (5th Cir. 1979) (evidence that bank president loaned funds without securing a legally binding obligation for repayment sufficient to prove § 656 violations).

The evidence was sufficient to prove all elements of the willful misapplication of bank funds, 18 U.S.C.A. § 656.

AFFIRMED.