**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John R. ADAMSON, III,
Defendant-Appellant.**

No. 80–7284.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Jan. 11, 1982.
Opinion on Rehearing and Rehearing En Banc March 4, 1982.

* Former Fifth Circuit case, Section 9(1) of Public    Law 96- 452—October 14, 1980.

R. Jackson B. Smith, Jr., Federal Public Defender, Martin C. Puetz, Asst. Federal Public Defender, Augusta, Ga., for defendant-appellant.

William T. Moore, Jr., U. S. Atty., Melissa S. Mundell, Frederick W. Kramer, Asst. U. S. Attys., Savannah, Ga., for plaintiff-appellee.

Before RIVES, KRAVITCH and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The appellant, John R. Adamson, III, and three others were indicted under 18 U.S.C.A. §§ 656[1], 1005[2], 1014[3], and 2[4] (West 1976) in connection with several loans made by the First Augusta Bank and Trust Company. After a jury trial, the appellant was convicted of one count of willful misapplication of bank funds in violation of § 656, one count of making a false entry in the books, reports, and statements of the bank in violation of §§ 1005 and 2, and three counts of knowingly making false statements to the bank for the purpose of influencing loan

---

1. 18 U.S.C.A. § 656 provides in pertinent part:

    Whoever, being an officer, director, agent or employee of ... any Federal Reserve Bank, member bank, national bank or insured bank, ... willfully misapplies any of the moneys, funds or credits of such bank ..., shall be fined not more than $5,000 or imprisoned not more than five years, or both. . . .

2. 18 U.S.C.A. § 1005 provides in pertinent part:

    Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

    Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

3. 18 U.S.C.A. § 1014 provides in pertinent part:

    Whoever knowingly makes any false statement or report, ... for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation ... upon any application, advance, discount, ... commitment, or loan, or any change or extension of any of the same, ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

4. 18 U.S.C.A. § 2 provides in pertinent part:

    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

applications in violation of §§ 1014 and 2. The appellant was acquitted on one count each of willful misapplication under § 656 and of false entries under § 1005. Adamson appeals to this court seeking review of the district court's instructions to the jury, the sufficiency of the evidence, and the admissibility of certain evidence.

## I. FACTS.

During the times covered by the indictment, the appellant Adamson was the president and a director of the First Augusta Bank and Trust Company;[5] he also served as a lending officer and was a member of the bank's Loan and Investment Committee. While serving in these capacities, the appellant participated in the processing and approval of four substantial loans that formed the basis of the indictment. The first of these loans ostensibly was made to Island Summit, Inc., although the actual beneficiaries of this loan were co-defendants R. Eugene Holley and Glenn B. Hester.[6] The bank was to look to these beneficiaries for repayment of this loan. The appellant was convicted of willfully misapplying funds (§ 656) and making false entries in the bank's books and records (§ 1005) in connection with this loan. The second loan was made in the name of Augusta Summit, Inc., but the proceeds went to and repayment was expected from Holley. The named borrower in the third loan was Fairway Finance Co., yet again Holley received the loan proceeds and was responsible for repaying the loan. Similarly, the fourth loan was made to Poplar Finance Co., with Holley again being the actual beneficiary and source of repayment. The appellant was convicted of knowingly making a false statement to the bank (§ 1014) in connection with these last three loans.

The government introduced evidence that the named borrowers were inactive corpora-

tions and that these corporations were not financially capable of repaying the loans. There was further testimony at trial that the making of these loans directly to Holley would have violated the bank's legal aggregate lending and unsecured loan limits. Making these loans directly to Holley through these corporations also violated the state law lending limitations, but structuring the loans in this fashion made detection of these violations difficult and tended to deceive the bank and the bank examiners about the true state of affairs. Thus, under the government's theory of the case, the appellant Adamson authorized a series of sham loans to nominal corporate borrowers to conceal an illegal and potentially unsafe concentration of bank loans to a single debtor.

## II. THE JURY INSTRUCTIONS: SECTION 656.

The appellant's primary focus on appeal has been the trial court's instructions to the jury. The appellant contends that the court erred in defining for the jury the requisite mental state the accused must have to commit willful misapplication of bank funds under 18 U.S.C.A. § 656 (West 1976). In particular, the appellant objects to the charge that:

> A reckless disregard of the interest of the bank is the equivalent of the intent to injure or defraud the bank.

> . . . .

> I charge you that the element of criminal intent necessary for conviction for a willful misapplication of bank funds is not fulfilled by a mere showing of indiscretion or foolhardiness on the part of the bank officer. His conduct must amount to reckless disregard of the bank's interests . . .

> . . . .

**5.** The First Augusta Bank and Trust Co. is insured by the Federal Deposit Insurance Corporation.

**6.** Co-defendants Holley and Hester were law and business partners. Hester also was a major stockholder in the bank and served as a director, a member of the Loan and Finance Committee, and attorney for the bank. These defendants were convicted on several counts, but have declined to pursue appeals. The fourth defendant, Jack E. Fink, Chairman of the Board of the Bank, was acquitted on all counts under which he was charged.

The word "willful" is also employed to characterize a thing done without ground for believing it is lawful, or conduct marked by a reckless disregard, whether or not one has the right to so act.[7]

The appellant argues that § 656 is a "specific intent" crime (or, alternatively, at least a "general intent" crime) and to violate § 656 one must have the purpose (*i. e.*, "specific intent"), or at least knowledge (*i. e.*, "general intent"), of defrauding or injuring the bank. The district court's charge, the appellant argues, impermissibly lowered the government's burden of proof by equating the lesser mental state of "recklessness" with the required higher *mens rea* of "purpose" or "knowledge." The appellant contends that such a reduction in the government's burden of proof violates due process and jury trial rights and contravenes the Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

In *Sandstrom* the Court reversed a conviction for "purposefully or knowingly" causing the death of another because the jury had been charged that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Court held that this instruction unconstitutionally created the possibility that a material issue (*i. e.*, the accused's mental state) would be removed from the jury's consideration and that the prosecution would be relieved of having to prove beyond a reasonable doubt a material element of the crime.[8]

Here, as in *Sandstrom*, the challenge is that the instruction reduced the prosecution's burden of proving the requisite state of mind for the offense. In *Sandstrom*, the statutory *mens rea* the government was required to prove was not in dispute. Yet, in assessing whether a jury instruction improperly lowers the government's burden of proof, a threshold inquiry must be to determine the government's burden of proof—*i. e.*, when an instruction concerning the accused's state of mind is the issue, what is the requisite *mens rea* for the crime?

Section 656 of Title 18 of the United States Code prescribes punishment for any bank official who "willfully misapplies" bank funds, but the statute does not define "willfully." The courts have uniformly construed the statute to include the "intent to injure or defraud the bank" as a material element of the crime. *E. g., United States v. Farrell*, 609 F.2d 816, 819 (5th Cir. 1980); *United States v. Mann*, 517 F.2d 259, 267 and n. 3 (5th Cir. 1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *Seals v. United States*, 221 F.2d 243, 245 (8th Cir. 1955).

The terms "willfully" and "intent," unfortunately, have a statutory and common law history that is less than unequivocal. In its various usages, "intent" may denote the mental state that the American Law Institute's Model Penal Code designates as "purpose," or the mental state that the Model Penal Code designates as "knowledge," or a general notion of *mens rea*, or the particular *mens rea* required for a particular crime. *See United States v. Bailey*, 444 U.S. 394, 403, 100 S.Ct. 624, 630, 62 L.Ed.2d 575 (1980); W. LaFave and A. Scott, *Handbook on Criminal Law*, 195–203

---

7. The court's entire charge on willful misapplication under § 656 spanned seven pages and also included instructions that "[t]o act with intent to defraud means to act willfully and with a specific intent to deceive or to cheat," and that "a thing is done willfully if it is done voluntarily and purposefully and with a specific intent to fail to do what the law requires, that is to say, with an evil motive or a bad purpose, whether to disobey or disregard the law." *See generally* Record on Appeal, Vol. VIII at 18–24.

8. The form of the instruction in the present case would seem even more clearly to take an issue away from the jury than that invalidated in *Sandstrom*. In *Sandstrom* the jury was in-

structed that the law *presumes* intent from certain facts; here the instruction was that certain facts *are equivalent* to intent. The instruction in this case would seem more forcefully than that in *Sandstrom* to *require* the jury to find intent once the prescribed facts were proven. The mere *possibility* that the jury might "interpret the instruction as automatically directing a finding of intent," 442 U.S. at 516, 99 S.Ct. at 2455, was at the heart of the objection in *Sandstrom*. 442 U.S. at 515–19, 99 S.Ct. at 2454–56. *See U. S. v. Welliver*, 601 F.2d 203, 210 and n. 14 (5th Cir. 1979); *Benchwick v. U. S.*, 297 F.2d 330, 333, n. 5 (9th Cir. 1961).

(1972). Similarly, the term "willfully" as employed in diverse statutes may correspond to any of the different levels of the Model Penal Code's hierarchy of culpable states of mind (*i. e.*, purpose, knowledge, recklessness, or negligence). *See* W. La-Fave and A. Scott, *supra*, at 192–94, 212–13.

The appellant contends that § 656, the willful misapplication statute, requires as the necessary mental state that the accused have, in Model Penal Code terms, the *purpose* to defraud or injure the bank or, at the very least, the *knowledge* that his conduct will tend to produce this result.[9] Brief of Appellant at 18–19.

The appellant's position on the state of mind requirement under § 656 is not with-out some support. The statutory predecessor to § 656, 12 U.S.C. § 592 (Rev.Stat. § 5209), had been construed to import a *mens rea* requirement roughly equivalent to purpose or knowledge (and more than mere recklessness).[10] There are grounds for believing that the state of mind requirement under the old statute was meant to be applied to § 656. The Reviser's Note to 18 U.S.C.A. § 656 asserts: "The original section, containing more than 500 words, was verbose, defuse, redundant, and complicated. . . . The revised section *without changing in any way the meaning or substance of existing law*, clarifies, condenses, and combines related provisions largely rewritten in manners of style." (Emphasis added.) [11]

---

9. The appellant uses the traditional, somewhat ambiguous terminology of "specific intent" and "general intent" in making this point. For reasons expressed in the preceding text, modern analysts prefer the more precise terminology of the Model Penal Code's hierarchy of culpable states of mind. *See Bailey v. United States*, 444 U.S. 394, 403–05, 100 S.Ct. 624, 630–32, 62 L.Ed.2d 575 (1980).

10. *Evans v. United States*, 153 U.S. 584, 592, 594, 14 S.Ct. 934, 938, 38 L.Ed. 830 (1894) ("The criminality really depends upon the question whether there was, at the time of the discount, a *deliberate purpose* on the part of the defendant to defraud the bank of the amount" and "the gravamen of the offense consists in the *evil design* with which the misapplication is made . . . .") (Emphasis added); *United States v. Britton*, 108 U.S. 193, 199, 2 S.Ct. 526, 531, 27 L.Ed. 701 (1883) (The defendant's conduct "might be an act of maladministration on the part of the defendant. It might show neglect of official duty, indifference to the interests of the association or breach of trust, and subject the defendant to the severest censure and to removal from office; but to call it a criminal misapplication by him of the moneys and funds of the association, would be to stretch the words of this highly penal statute beyond all reasonable limits."); *Johnson v. United States*, 95 F.2d 813, 818 (4th Cir. 1938) (Error to omit instruction that jury must find that defendant bank officer "had knowledge of . . . [the named borrowers'] financial weakness or of the infirmity of the note."); *Morrissey v. United States*, 67 F.2d 267, 277 (9th Cir. 1933), *cert. denied* 293 U.S. 566, 55 S.Ct. 77, 79 L.Ed. 666 (1934) (Instruction equating reckless act to willful one not error where modified "to the effect that the jury was not required as a matter of law to presume an intent to defraud from mere recklessness. . . ."); *Pearce v. United*

States*, 192 F. 561, 562 (5th Cir. 1911) ("[T]he only intent necessary to be proved was that the plaintiff in error did the acts complained of purposely or designedly."); *United States v. Fish*, 24 F. 585, 588 (C.C.S.D.N.Y.1885) ("[T]he honest exercise of official discretion in good faith, without fraud, for the advantage, or supposed advantage, of the association is not punishable . . . . In the charge the jury were carefully instructed that the accused was not to be convicted for making an irregular, unsafe, or reckless loan."). *See also Prettyman v. United States*, 180 F. 30, 34 (6th Cir. 1910) ("The conduct of Littich, the cashier, in recklessly paying overdrafts, and that of Prettyman, the vice president, in insisting upon and accepting excessive accommodations for the woolen company, of which he was then the chief executive officer, were most reprehensible and altogether lacking in faithfulness to the trust reposed in them by the stockholders of the bank and merits the severest condemnation. . . . But gross maladministration and inexcusable breach of duty on the part of its officers in the management of a national bank, however disastrous such conduct may be to its stockholders, are not punishable unless they come within the provisions of section 5209 of the Revised Statutes.").

11. *See also Williamson v. United States*, 332 F.2d 123, 133 n. 15 (5th Cir. 1964) ("The statute, 18 U.S.C.A. § 656, is a recodification of former 12 U.S.C.A. § 592. Therefore, the old cases under 12 U.S.C.A. § 592 are pertinent" [in *Williamson*, to determining the differences between offenses covered by § 656].) (Citation omitted). *See generally, United States v. Klock*, 100 F.Supp. 230, 232 233 (N.D.N.Y. 1951), *reversed on other grounds*, 210 F.2d 215 (2nd Cir. 1954) (general review of the legisla-

The decisions of other circuits on the state of mind requirement under § 656 also tend to support the appellant's position, and are in accord with the case law under the previous statute. No other circuit has approved a jury instruction equating "recklessness" with "intent to injure or defraud." [12] The circuits generally construe the misapplication provision of § 656 to require a mental state of either knowledge [13] or purpose [14] of defrauding or injuring the bank.

Nevertheless, a careful examination of Fifth Circuit precedent, in particular *United States v. Welliver*, 601 F.2d 203 (5th Cir. 1979), leads us to the conclusion that we are bound to reject the appellant's claim. The defendant in *Welliver* was a bank president who authorized on behalf of certain third parties the transfer of bank funds from one account to another, which in effect, by virtue of certain bank accounting procedures, made "loans" to these third parties. Although these "loans" were ultimately repaid with full market rate interest, the defendant was convicted of willful misapplication for allowing bank funds to be paid out without a written obligation for repayment. The defendant was also convicted of making false entries in the bank books in violation of § 1005.

The defendant in *Welliver* objected to a jury instruction that is virtually identical to the pertinent part of the charge at issue here—*i. e.*, the definition that "[a] reckless disregard of the interest of the bank is the equivalent of intent to injure or defraud the bank." [15] The court held that a recklessness instruction inadequately charged

tive history of § 656 with respect to the "intent to injure or defraud" requirement).

Parts of former statute 12 U.S.C.A. § 592 were also recodified at § 1005, as well as at § 656, of Title 18. Section 1005, *inter alia*, proscribes false entries in bank books and reports, see *supra* note 2, and retains the former statutory language, "with intent to injure or defraud such bank," that has been judicially read into § 656. The Revisor's Note for § 1005, however, also states that "[n]o changes of meaning or substance were made" by the recodification. This court has held that a "recklessness" instruction does not adequately charge the "intent to injure or defraud" element of § 1005. *United States v. Welliver*, 601 F.2d 203, 210 (5th Cir. 1979).

12. In this regard, a distinction must be drawn between cases where the issue on appeal is the sufficiency of the evidence and where it is the correctness of the jury instructions. Where the sufficiency of the evidence is at issue, a finding that the defendant acted recklessly may be enough to sustain a jury verdict because from this finding the jury *may infer* the requisite mental state of purpose or knowledge. The courts, in this context, have not held that recklessness is the requisite *mens rea* nor is it a substitute for this *mens rea*; rather, these decisions treat recklessness as a fact or circumstance from which *a jury may infer* the requisite element of knowledge or purpose. See *e. g.*, *United States v. Larson*, 581 F.2d 664, 667 (7th Cir. 1978); *United States v. Cooper*, 577 F.2d 1079, 1085 (6th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *United States v. Reynolds*, 573 F.2d 242, 244-45 (5th Cir. 1978); *Logsdon v. United States*, 253 F.2d 12, 15 (6th Cir. 1958).

The Sixth Circuit has upheld a jury instruction that " 'acts knowingly done with a reckless disregard for the interests of the bank *may justify a finding of intent* to defraud or injure the bank' " because "a reckless disregard *will support an inference* of intent to injure." *United States v. Cooper, supra*, 577 F.2d at 1083 (emphasis added). Indeed, in the same opinion the court rejected the use of sufficiency standards for defining the jury's task: "We see no value in attempting to transform a test for sufficiency of the proof into an instruction to the jury." *Id.* at 1085.

13. See, *e. g.*, *United States v. Larson*, 581 F.2d 664, 668 (7th Cir. 1978); *United States v. Gallagher*, 576 F.2d 1028, 1046 (3rd Cir. 1978), *cert. dismissed*, 444 U.S. 1040, 100 S.Ct. 713, 62 L.Ed.2d 674 (1980); *United States v. Gens*, 493 F.2d 216, 221-22 (1st Cir. 1974); *United States v. Fortunato*, 402 F.2d 79, 81 (2nd Cir. 1968), *cert. denied*, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969).

14. See, *e. g.*, *United States v. Arthur*, 544 F.2d 730, 736 (4th Cir. 1976); *United States v. Mullins*, 355 F.2d 883, 887 (7th Cir.), *cert. denied*, 384 U.S. 942, 86 S.Ct. 1465, 16 L.Ed.2d 540 (1966). See also *Lippi v. Thomas*, 298 F.Supp. 242, 248 (M.D.Pa.1969) (Declaratory judgment action concerning whether conviction for willful misapplication bars holding union office under the Labor and Management Reporting and Disclosure Act).

15. Compare *United States v. Welliver*, 601 F.2d 203, 209, n. 13 (5th Cir. 1979), with Record on Appeal, Vol. VIII at 20 21.

the requisite mental state for the § 1005 false entry offense, citing, *inter alia, Sandstrom v. Montana. United States v. Welliver, supra,* 601 F.2d at 210 and n. 14. For willful misapplication under § 656, however, the court upheld the charge. Acknowledging that the "intent to injure or defraud" is an essential element of both §§ 1005 and 656, the court observed that for the former section this element is included in the statutory language while for the latter this element is judicially imposed. The court then stated:

> As pertains to § 656, this court has held that " 'reckless disregard of the interest of a bank is, for the purpose of "willful misapplication," the equivalent of intent to injure or defraud.' " *United States v. Reynolds,* 573 F.2d 242, 244–45 (5th Cir. 1978), *quoting United States v. Wilson,* 500 F.2d 715, 720 (5th Cir. 1974). Consequently, the trial judge's instruction was correct as to § 656.

*Id. Welliver* thus has interpreted the "intent to injure or defraud" element of willful misapplication to import a *mens rea* of merely recklessness.

Appellant would have us construe *Welliver* as holding that the requisite mental state under § 656 is knowledge or purpose and that such a mental state is adequately charged, for § 656 purposes but not for

§ 1005, by equating it to reckless disregard of the bank's interests. Appellant, of course, then argues that the jury instructions so sanctioned by *Welliver* are unconstitutional, under *Sandstrom.* We decline to follow appellant's reasoning. Such a construction of *Welliver* would indeed raise grave constitutional problems under *Sandstrom;* [16] such a construction would require that we assume that *Welliver*'s holding with respect to § 656 is patently inconsistent with its holding with respect to § 1005. Under the appellant's view, *Welliver,* while requiring a *mens rea* of more than recklessness for both statutes, on one hand would recognize the *Sandstrom* problems of equating recklessness with the higher degree of culpability required under § 1005, but on the other hand would approve of this same equivalence for § 656. We should hesitate to construe a decision by a panel of this court so as to render it constitutionally suspect and internally inconsistent. We interpret *Welliver* to require a different state of mind, and hence different jury instructions, for §§ 656 and 1005.[17]

◼ The appellant argues that it was not logical to construe these related statutes [18] as requiring a different *mens rea* standard. Appellant urges that "[t]his double standard is not logical and must not continue."

---

**16.** See note 3, *supra.*

**17.** One other possible interpretation of *Welliver* that would harmonize that decision with the law in the other circuits does not survive careful examination. This interpretation begins with the premise that an offense can have a different state of mind requirement for different elements of the crime. *United States v. Bailey* 444 U.S. 394, 405–06, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980); *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). The recklessness charge approved in *Welliver* might be said to refer only to the ultimate consequences—whether the acts in question will tend to injure or defraud the bank—and not to the constituent parts of the offense. Under this analysis, the defendant in *Welliver* would have violated the statute if he *knew* he was in effect arranging a loan without a written obligation for repayment but need only have been *reckless* with regard to whether such a loan would tend to injure or defraud the bank (*i.e.*, the defendant need not *know* that the loan would tend to cause such harm). In

the present case, under this analysis, to violate § 656 the defendant would have to *know* that the named borrower lacked the ability or intent to repay, but the defendant need only be *reckless* with regard to whether such a loan would tend to injure or defraud the bank. *Cf. United States v. Gallagher,* 576 F.2d 1028, 1046 (3rd Cir. 1978), *cert. dismissed,* 444 U.S. 1040, 100 S.Ct. 713, 62 L.Ed.2d 674 (1980) (Defendant bank official must know that named borrowers lack the ability or intent to repay the loans.)

The charge approved by *Welliver,* however, is not consistent with this analysis: the jury was not instructed on any knowledge requirements under § 656. The bald equation of reckless disregard of the interests of the bank with intent to injure or defraud the bank would permit, indeed seem to require, the jury to convict if the defendant merely recklessly allowed a loan without proper documentation to occur.

**18.** *See* note 11, *supra.*

Reply Brief of Appellant at 3. This argument is best addressed to the court of appeals sitting *en banc*; as a panel of this court we lack the power to overrule a decision by a prior panel. *In re: Corrugated Container Antitrust Litigation*, 647 F.2d 460, 461 (5th Cir. 1981); *Ford v. United States*, 618 F.2d 357 (5th Cir. 1980). A prior panel of this court has confronted the issue of whether a recklessness instruction adequately charges the mental state required under § 656 and has concluded that it does. *Welliver* binds this court. Other Fifth Circuit opinions that have used language suggestive of a knowledge or purpose *mens rea* for § 656 in the course of approving jury instructions, *United States v. Southers*, 583 F.2d 1302, 1306–07 and n. 6 (5th Cir. 1978), affirming evidentiary rulings, *United States v. Tidwell*, 559 F.2d 262, 266 (5th Cir. 1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978), and finding the proof sufficient, *United States v. Farrell*, 609 F.2d 816, 820 (5th Cir. 1980); *United States v. Killian*, 541 F.2d 1156 (5th Cir. 1976), do not vitiate the holding of *Welliver*. The ruling in each of these cases is consistent with holding that § 656 takes a *mens rea* of recklessness. Since each of these decisions rejected a contention raised by the defendant, the use of language suggesting a *mens rea* of purpose or knowledge only

implies that the defendant was not entitled to prevail even if given the benefit of a more favorable mental state requirement than that to which the defendant was otherwise entitled.

■ We acknowledge a considerable unease with our holding that § 656 imposes only a *mens rea* standard of recklessness. Several factors contribute to our difficulty with this holding: the inconsistent *mens rea* requirement of the related statute § 1005, the clear holding of cases construing the predecessor to § 656 as requiring purpose and the legislative history suggesting that § 656 was not intended to change the substance of the law, the uniform holdings of the other circuits construing § 656 to require either purpose or knowledge, and the strong dictum to the same effect in Fifth Circuit cases. However, we are bound by the holding of *Welliver*,[19] and such arguments can be entertained only by this court sitting en banc.

■ This conclusion would seem to dispose of two of the appellant's other objections to the jury instructions. The appellant claims that the district court erred in charging that "[t]he requirement that the defendant intend to injure or defraud the bank may be shown by an unlawful act

**19.** We note that the appellant in *Welliver* asserted on appeal several errors in the trial below. The court reversed and remanded for a new trial on the basis of two of the several challenges: first, finding that the trial judge had improperly interjected himself into the trial in such manner and to such an extent as to deny Welliver a fair trial; and second, finding that the recklessness charge was error with respect to § 1005. Although not necessary to its narrow decision to reverse, the court proceeded to address and reject the challenge to the recklessness instruction with respect to § 656. It is common practice for an appellate court to consider and decide issues which are fully presented and litigated and which will likely arise on retrial, even though such decision may not be necessary to support the narrow decision to reverse. *See Cross v. Harris*, 418 F.2d 1095, 1105 n. 64 (D.C.Cir.1969). The practice serves an important interest in judicial economy. In this broader sense, we conclude that the *Welliver* panel's decision sustaining the § 656 recklessness instruction was necessary to the proper disposition of that case.

Moreover, we note that had the *Welliver* panel reached the contrary result on the § 656 instruction, the decision would have been alternative holding supporting the reversal, and thus binding on subsequent panels. *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 925 n. 21 (5th Cir. 1977) (en banc). We would find it somewhat anomalous to say that a decision in one direction would be holding but a decision on the same issue and under the same circumstances in the other direction would be dictum. Thus, we conclude that *Welliver's* decision of the § 656 issue was holding, and not dictum, and is binding on this panel. *See Florida Central Railroad Co. v. Schutte*, 103 U.S. 118, 143, 26 L.Ed. 327 (1881) (Although there the ruling of the prior case was an alternative holding, the Court broadly asserted: "It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter."); *Cold Metal Process Co. v. E. W. Bliss*, 285 F.2d 231, 236 (6th Cir. 1960).

voluntarily done, the natural tendency of which may have been to injure the bank." Brief of Appellant at 32; Record on Appeal, Vol. VIII at 21. The appellant argues that this charge implies a *mens rea* for § 656 of only recklessness (Brief of Appellant at 14, 33–34), but assuming arguendo that this is true, *Welliver* sanctions charging such a mental state. Yet, even if the willful misapplication statute required a *mens rea* higher than recklessness, the district court did not err in giving this instruction. The phrase "may be shown by" merely *permits*, and does not direct, the jury to draw an inference of the requisite *mens rea* from certain facts. Instructing the jury about such a permissive inference does not create any problems under *Sandstrom*, as the jury remains free to accept or reject the inference. *See* 442 U.S. at 514–15, 99 S.Ct. at 2454–55. The instruction removes no issue from the jury's consideration, nor does it relieve the government of the burden of proving every material element of the crime. Indeed, where a state of mind is an element of an offense, it is almost invariably proven by inferences from the facts and circumstances. A similar instruction has been sustained by this court in *United States v. Southers*, 583 F.2d 1302, 1308 (5th Cir. 1978).

On similar footing is the appellant's contention that the district court erred in failing to charge the jury that the defendant in this case could not be guilty of willfully misapplying bank funds unless he knew that the named borrowers lacked the ability or intent to repay the loans. The appellant did not object at trial to this omission, and thus our standard of review is plain error. *United States v. DeLeon*, 641 F.2d 330, 335

and n. 3 (5th Cir. 1981). Although the law in other circuits might entitle the appellant to such an instruction, *United States v. Gallagher*, 576 F.2d 1028, 1046 (3rd Cir. 1978), *cert. dismissed*, 444 U.S. 1040, 100 S.Ct. 713, 62 L.Ed.2d 674 (1980); *United States v. Gens*, 493 F.2d 216, 221–22 (1st Cir. 1974), *Welliver*'s holding on the mental state requirement of § 656 might render such an instruction inaccurate and inappropriate in this circuit. We need not, however, decide this point. The trial court gave an instruction [20] that is equivalent to the charge appellant now seeks and that tracks the language of the cases of other circuits on which appellant relies. Any difference between the instruction given and that which the appellant now requests does not rise to the level of plain error.

## III. JURY INSTRUCTIONS: SECTION 1005.

■ Appellant also challenges the recklessness instructions with respect to their effect on the jury's deliberations on the § 1005 offense. Here appellant's claim takes on a different posture. This court has held that an instruction on recklessness inadequately charges the mental state necessary to convict under § 1005 for making false entries into bank books, reports, or statements. *United States v. Welliver*, 601 F.2d 201, 210 and n. 14 (5th Cir. 1979). In *Welliver* the trial court expressly instructed the jury that reckless disregard of the interests of the bank was the equivalent of the intent to injure or defraud element of § 1005. *Id.* at 209, n. 13. In the present case, the learned trial judge separated the

---

**20.** The instruction reads in pertinent part:

I charge you that if you find the defendant extended credit to a named borrower who was financially able at the time of the loan to repay the loan, knew that it was obligated to repay the loan, and that no assurances were given to it that the bank not look to it to repay the loan, then in that event, you would be authorized to acquit the defendant of misapplication of bank funds.

I charge you that if you find the named borrower is both financially capable of repaying

the loan and that the named borrower fully understands that it is his responsibility to repay the loan, such a loan cannot—absent other circumstances—properly be characterized as a sham or dummy transaction, even if bank officials knew that the named borrower would pay the proceeds over to a third party. In this situation, the bank official has simply granted a loan to a financially capable party, which is precisely what a bank official may do.

Record on Appeal, Vol. III at 22–23.

instructions he gave on § 1005 from those he gave on § 656. The instructions on recklessness were confined to the portion of the charge concerning the § 656 offense. The district court, however, did not define "intent to injure or defraud" as that language is used in § 1005. Nor was the jury cautioned that they should not apply the definition of intent to injure or defraud under § 656 to the § 1005 counts. The court did not instruct the jury that a mere finding of recklessness would not in itself suffice to establish the element of intent required for § 1005. The court's instructions on the state of mind for § 656 are far more elaborate and detailed than those for § 1005, and the court gave its instructions on § 1005 immediately following those given for § 656. Under these circumstances, the jury reasonably could have assumed that intent to defraud means the same thing under both statutes, and that they should apply the definitions of intent to defraud offered by the court for the § 656 counts to the § 1005 counts. A reasonable possibility exists that the appellant may have been convicted for only recklessly making a false entry in the bank books or records. This would be an impermissible result under *Welliver*, and the appellant's conviction under § 1005 must accordingly be reversed.[21]

## IV. SUFFICIENCY OF THE EVIDENCE.

Appellant also claims that the proof was insufficient to support convictions on the three counts under § 1014 of knowingly making false statements to the bank for the purpose of influencing the action of the bank on the loan applications. This contention is without merit. The gist of appellant's argument is that the government failed to prove that the appellant made, or aided and abetted in making, a knowingly false statement. Appellant contends that the loans which form the basis of these counts "were basically loans for Mr. Holley" and that the documents and other statements presented to the bank make no representations to the contrary.[22] Brief of Appellant at 26.

In assessing the sufficiency of the evidence, a reviewing court must examine the evidence in the light most favorable to the government. *United States v. Simmons*, 503 F.2d 831, 837 (5th Cir. 1974). The evidence here amply supports the jury's verdict. The loan applications and files listed as the named borrowers, respectively, the corporations Augusta Summit, Inc., Fairway Finance Co., and Poplar Finance Co., and not R. Eugene Holley. These documents at best reveal Holley as a guarantor and not the maker of these loans. The named borrowers were inactive corporations, and the loan files were devoid of financial statements, corporate resolutions, and other information from these companies. The proceeds from these loans went directly into the personal account of Holley. In one instance the appellant authorized the deposit of a loan check payable to Poplar Finance Co. directly into Holley's account notwithstanding the lack of a proper endorsement by the payee.

---

21. Lastly, with respect to the jury charge, the appellant originally challenged as plain error the district court's instruction that:

> Proof beyond a reasonable doubt, therefore, is proof of such convincing character that you would be willing to rely and act upon it without hesitation in the most important of your affairs.

At oral argument counsel for appellant abandoned this contention, conceding that the very recent Fifth Circuit decision in *United States v. Clayton*, 643 F.2d 1071, 1074–75 (5th Cir. 1981), holds that this exact instruction is not plain error.

22. Appellant has asserted somewhat inconsistent positions in attacking the jury instructions and the sufficiency of the evidence. Appellant has argued with respect to the jury instructions that he was entitled to an instruction that he could not be convicted unless he knew that the named borrower lacked the ability or intent to repay the loans. Yet in contesting the sufficiency of the evidence, appellant takes the position that the loans to various named borrowers were really loans to Holley and that these named borrowers were never expected to receive the proceeds or repay the loans.

The jury heard testimony that Georgia state banking law restricted the loans a single person might obtain from the First Augusta Bank and Trust to a limit of $140,-000 for unsecured loans and $280,000 for total indebtedness. These restrictions applied regardless of whether the loans were made directly or indirectly to the actual borrower. The loans made in this case violated both of these limits. Moreover, bank examiners testified that designating these corporations in the bank's books and records as the named borrowers tended to conceal the identity of the true debtor and deceived bank examiners and the bank's Board of Directors. This thwarted discovery of the illegal and potentially unsafe concentration of bank funds loaned to a single debtor. These examiners stated that they consider such entries in bank books and records to be false. Indeed, this court has held that a "false statement" within the meaning of § 1014 includes representing to a bank that a particular party is to be a borrower on a loan when in fact that party is never intended to receive the loan proceeds or have any liability on the loan. *United States v. Clayton*, 589 F.2d 195 (5th Cir. 1979). The evidence more than sufficiently supported a jury finding that a false statement to the bank had been made.

The record also reveals ample evidence for the conclusion that the appellant knew that false statements were being made to the bank and participated in, or aided and abetted in, the making of these false statements. The appellant constructed the loan files in question and presented them for approval to the Loan and Investment Committee. These files, as previously noted, were strikingly deficient in information on the named borrower. Banking experts testified that when a bank makes substantial loans to new corporate borrowers, such as was the case here, the bank customarily obtains detailed financial information and collateral in the form of corporate stock from the debtor. The bank, through the appellant acting as lending officer, took neither of these precautions for any of these loans. The appellant even ordered a teller to pay the proceeds of one loan check directly into Holley's personal account despite the absence of an endorsement by the payee. Given the appellant's position in the bank and the nature of these false statements, the jury justifiably could find that the appellant knew that the loan files he presented to the Loan and Investment Committee contained false statements. The evidence supports the appellant's convictions on the three § 1014 counts.

## V. ADMISSIBILITY OF EVIDENCE.

Lastly, the appellant complains that the district court erred in permitting, over defense objection,[23] testimony by the government's rebuttal witness about a certain cease and desist order. The testimony attacked by appellant is that of Arthur Lee Emerson and concerns, in pertinent part, a certain cease and desist order negotiated on behalf of the bank by co-defendant Hester. The cease and desist order limited the

---

23. The record reveals in connection with this testimony only the most general objection raised by co-defendant Hester. Appellant asserts that he joined in this objection. Brief of Appellant at 29. Since the government does not contest this point and the district court at other times during trial stated that he would consider the objection of one defendant to be the objection of all, we will assume that the appellant did seasonably join in co-defendant Hester's objection. The objections of Hester to this testimony consisted of:

> Your Honor, may I object on the grounds that I thought when we talked about this witness, he was going to testify to some

statements I made, was the representation made to me. Now, this is again going beyond the scope of what Your Honor's order is.

And

> Your Honor, may I object, because I have just recalled to my memory that what the question was that Mr. Moore asked me, he asked me did I talk to Mr. Emerson about a $50,000 loan to Mr. Holley. My answer was, "I don't recall any such conversation." I believe that was it. And he's opening up in violation of what I consider to be Your Honor's order.

Record on Appeal, Vol. VII at 274, 275–76.

bank's lending to $30,000 per week. The appellant's brief seems to suggest that the testimony was inadmissible as irrelevant.

The evidence at issue here, however, was highly relevant. Co-defendant Hester testified in his own behalf surveying his career, personal history, family and business ties, medical problems, personal philosophy, and civil contributions. By doing so, Hester attempted to attest to his own good character and negate any inference that he had the requisite criminal intent. Such testimony was proper under the Federal Rules of Evidence. By so testifying, however, Hester opened the way for the government to introduce evidence to rebut these claims of good character and lack of intent. See Fed.R.Evid. 404(a)(1) and (b).[24]

We need not decide whether appellant may have been entitled to cautionary instructions limiting the use of this evidence, because appellant did not adequately make such a request to the trial court nor preserve the issue for appeal. Appellant merely joined in a most general and vague objection of his co-defendant, and requested no limiting instructions. Objections and the grounds therefor should be made with particularity. See *Wright v. Hartford Accident & Indemnity Co.*, 580 F.2d 809, 810 (5th Cir. 1978); *United States v. Arteaga-Limones*, 529 F.2d 1183, 1198–99 (5th Cir. 1976), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1977); *Fed.R. Evid.* 103(a)(1). *See also United States v. Benton*, 637 F.2d 1052, 1057, n. 3 (5th Cir. 1981).

Moreover, this testimony was not very prejudicial to the appellant. The witness never mentioned the appellant, and the transactions about which he testified do not involve the appellant. Indeed, on cross-examination the witness acknowledged that he did not know the appellant at all. The testimony implicated to a far greater degree co-defendant Fink, who was acquitted, than it did the appellant. Neither the appellant nor any other defendant raised any objection, despite an express invitation by the district court to do so, to the introduction into evidence of the minutes of a board meeting summarizing the discussion about and containing an outline of the cease and desist order. Record on Appeal, Vol. VII at 281–82.

In sum, we find that the district court committed no reversible error in admitting this testimony.

## VI. CONCLUSION.

In conclusion, we hold that the district court committed no reversible error in instructing the jury on the *mens rea* required under § 656 or on the meaning of "reasonable doubt." We also hold that the evidence sufficiently supports the convictions on the three counts under § 1014. The appellant has shown no reversible error by the district court in allowing testimony concerning the cease and desist order. We do, however, reverse the appellant's conviction under § 1005 and remand the case to the district court because the jury instructions as a whole may have created the erroneous impression that recklessness was a sufficient *mens rea* for that offense.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

## ON REHEARING AND REHEARING EN BANC

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, FRANK M. JOHNSON, JR., HENDERSON, HATCHETT, ANDERSON, and THOMAS A. CLARK, Circuit Judges.

BY THE COURT:

A member of this Administrative Unit of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in this Administrative Unit in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by this Administrative Unit of the Court en banc on briefs without oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

---

**24.** The method by which this rebuttal was made may raise some questions under Fed.R. Evid. 405(b). The appellant made no specific objection based on this Rule at trial and has not argued the point before this court. Thus, this issue is not properly before this court, and we express no opinion on it.