**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Olen Mack BROCK, Defendant–Appellant.**

**No. 86–1902.**

United States Court of Appeals, Fifth Circuit.

Nov. 20, 1987.
Rehearing Denied Dec. 18, 1987.

---

A. L. (Dusty) Rhodes, Rhodes, Heatherly & Myers, Abilene, Tex., for defendant-appellant.

James K. Blankinship, Asst. U.S. Atty., Austin, Tex., for plaintiff-appellee.

Before GOLDBERG, POLITZ, and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

Convicted by a jury of two counts of fraudulent participation in bank loans in violation of 18 U.S.C. § 1006, and of one count of misapplication of bank funds, 18 U.S.C. § 656, Olen Mack Brock appeals, contending that § 1006 does not apply to bank officers, that the court erred in allowing testimony by certain witnesses, and that the government failed to prove fraudulent intent. The government concedes that we should vacate the § 1006 convictions and we do so. We find no abuse of discretion in permitting the testimony of the challenged witnesses and sufficient evidence to support the conviction under § 656. That conviction is affirmed.

### Background

In 1973 Brock began his employment with First National Bank of Midland (FNB) as an assistant auditor. A college graduate with a degree in economics and accounting, Brock had worked in the accounting field for nearly 15 years before joining the staff at FNB. He rose quickly and by 1975 was assigned the additional duties as bank comptroller, the person responsible for all bank records. From 1975 until 1980 Brock worked in the correspondent banking department. In 1980 he became a commercial loan officer.

One of Brock's first loan customers was Sam Walker Orr, who owned and operated a construction company called Quadco Construction. After a few small loans, Orr and Brock became partners in Quadco Rentals, a partnership formed for the purpose of owning and leasing a forklift. Brock arranged for a $20,000 loan with Western State Bank for the purchase of the forklift which they planned to rent to Quadco Construction and others in order to generate income to service the loan. Those plans did not jell and Brock suggested dissolution of that venture.

Brock arranged for FNB to loan Quadco Construction the funds needed to purchase the forklift from the partnership. Quadco Construction paid the loan proceeds to Quadco Rentals. Part of the proceeds were used to pay the balance due Western

State Bank. The remainder went to Brock as his share of the partnership profits.

Brock had two other business ventures with Orr. Their next venture involved a piece of real estate on Highway 17. The property was purchased with $13,750 which Brock withdrew, without prior authorization, from the account of Western National Bank, a correspondent bank. Brock then sent Western National a promissory note to cover the unauthorized withdrawal, converting the action, with the help of a colleague at Western National, into a loan.

The third venture involved a mobile home real estate development program. Orr, Brock, and their wives formed Bost Land Corporation. The Brocks received 51 percent ownership. Brock arranged for a $65,000 loan from Western National, which he and Orr personally guaranteed. The venture was successful. Orr sought to repeat the activity, but with his grandfather, not Brock. Angered by the non-participation, Brock insisted that Orr either buy the Brock interest or sell to Brock the Orr interest in Bost Land Corporation. Orr opted to buy and agreed to pay Brock $12,500 in cash, give him one note for $12,500 payable in six months, and a second note for $58,800 payable $700 a month for six years. All of the stock in Bost Land was given in pledge for the note indebtedness.

Orr did not have the necessary cash and Brock was still liable on the outstanding loans to Western National. To facilitate the buyout, Brock took steps to have FNB take up the debts. On October 13, 1981, FNB received two drafts from Western National, directed to Brock's attention, one for the amount of $72,411.07 and the other for $5,002. The drafts were payable on October 17, 1981, a Saturday. The larger draft was the payoff amount for the Bost Land loan at Western National. The smaller draft was the payout on the Quadco Rentals Highway 17 project.

On October 15, 1981, Orr, as president of Bost Land, executed a note to FNB in the amount of $87,000. The note carried Brock's initials "OMB," partially obliterated. The note also carried the initials "S.C."

On Monday, October 19, 1981, the last day the drafts could be paid, Brock disbursed the proceeds of this loan. Brock began by paying the two drafts from Western National, leaving a balance of $9,562.93 in loan proceeds. He then contacted Western National and had them transfer $2,973.07 from Bost Land's checking account.

Brock had FNB tellers issue two money orders payable to Bost Land, one for $9,526.93 and the other for $2,973.07. Orr endorsed the two and used them to purchase one money order for $12,500, the cash amount due Brock under the buyout agreement. The $12,500 money order was made payable to Midland Financial Services, a business owned by Brock, and was delivered to Brock.

The October 15 note was due in 30 days. Brock approached Sarah Carter Barnett, a junior loan officer, and urged her to make a loan to Bost Land. He met with her three times in support of the loan. He stated that he was being bought out of the corporation without mentioning the $12,500 and $58,800 notes or that the Bost Land stock was pledged to him.

On November 14, 1981 Barnett made a loan to Bost Land evidenced by a note signed by Orr. The loan was made only after she insisted upon receiving a copy of Brock's written resignation from Bost Land. When questioned about the Bost Land loan, Barnett denied any knowledge of the October 15 note and said the initials "S.C." on the note were not placed there by her. She also testified that she knew nothing of the multi-faceted disbursement of the $87,000 loan proceeds on October 19.

On this, and other evidence, the jury returned verdicts of guilty on both the § 1006 and § 656 counts. Brock appeals, challenging the allowance of the testimony of government witnesses, and the sufficiency of the evidence.

### Analysis

■ Brock first complains that the government failed to reveal the names of five witnesses as ordered by a pretrial order which imposed on opposing counsel

"the continuing duty ... to reveal ... all newly discovered information or other material within the scope of this Standing Order." Assuming, without deciding, that this order required the government to disclose the names of all witnesses it planned to call, this complaint has no merit. During voir dire the names of four of the five witnesses were disclosed, as the prospective jurors were quizzed about any possible relationship. The trial court found this to be a sufficient identification prior to trial. "The admission of evidence which has not been properly identified in any pretrial order or other procedure is largely for the sound discretion of the trial judge." *United States v. Elam*, 678 F.2d 1234, 1253 (5th Cir.1982) (citations omitted). We find neither error nor abuse of discretion in the court's permitting these witnesses to testify.

The fifth witness was an expert called into the case during the course of the trial to examine certain instruments and to testify as a rebuttal witness. His name was not purposely withheld. Whether his testimony was to be allowed was addressed to the sound discretion of the trial court which may admit in rebuttal evidence which could have been received as part of the case-in-chief. *United States v. Sadler*, 488 F.2d 434 (5th Cir.), *cert. denied*, 417 U.S. 931, 94 S.Ct. 2642, 41 L.Ed.2d 234 (1974). Prejudice occurs only if the defendant is denied an opportunity to present evidence on any new issue raised. Brock had that opportunity. There was no abuse of discretion.

In reviewing a challenge to the sufficiency of the evidence to support a criminal conviction we must determine "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Chagra*, 669 F.2d 241, 257 (5th Cir.), *cert. denied*, 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original) (other citations omitted). A conviction for a violation of 18 U.S.C. § 656 requires proof of four elements:

> (1) that the accused was an officer, director, agent or employee of a bank; (2) that the bank was in some way connected with a nationally or federally insured bank; (3) that the accused willfully misapplied the monies or funds of the bank; and (4) the accused acted with the intent to injure or defraud the bank.

*United States v. Farrell*, 609 F.2d 816, 818 (5th Cir.1980) (citations omitted). Brock concedes the first two elements because FNB is insured by the FDIC and Brock was a loan officer.

In *United States v. McCright*, 821 F.2d 226 (5th Cir.1987), we established the requirements for determining "willful misapplication" of funds through bank loans. We stated:

> Section 656 does not impose an affirmative duty on bank officers and directors to disclose their personal interest in loans that may be approved by other individuals or departments in the bank. Manifest in the use of the term "misapply" is a requirement that the defendant made or influenced in a significant way, as an officer of the bank, the decision to extend the loan.

*McCright*, 821 F.2d at 230 (citations omitted).

The record contains evidence which a rational trier of fact could have found sufficient beyond a reasonable doubt to meet the *McCright* test for willful misapplication. This includes the October 15 note, the October 19 distribution of loan proceeds, including the ordering up of Bost Land funds from Western National, the paying of the two Western National drafts and receipt by Brock of the $12,500 money order, the urging of Barnett to make a "new" loan to cover the 30–day October 15 note, the partially obliterated "OMB" initials on the October 15 note, and the rejection of the "S.C." initials by Barnett. The record contains adequate evidence that Brock "made or influenced in a significant way ... the decision to extend the loan."

The final element under § 656 is intent to injure or defraud the bank. That element

523

"is proven by showing a knowing, voluntary act by the defendant, the natural tendency of which may have been to injure the bank even though such may not have been his motive." *United States v. Farrell*, 609 F.2d at 820. A rational jury could be satisfied with the proof of this element after viewing the circumstances surrounding Brock's sale of his interest in Bost Land to Orr, the transactions involving Orr's giving of notes to Brock with a pledge of all Bost Land stock, the dealings involving the Western National drafts, the October 15 note proceeds disbursal, the handling of the money orders, the urging of the "new" November loan, and the silence about the preexisting and priming debts from Orr and Bost Land to Brock.

We find the evidence sufficient as to each element of the § 656 count and that conviction is AFFIRMED. The convictions on the § 1006 counts are VACATED.