**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 96-4159

CHARLES BATSON, a/k/a Charles N.
Taylor,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CR-95-60-4)

Argued: December 6, 1996

Decided: January 29, 1997

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge, and
DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Milton Gordon Widenhouse, Jr., Assistant Federal Public
Defender, Raleigh, North Carolina, for Appellant. Yvonne Victoria
Watford-McKinney, Assistant United States Attorney, Raleigh, North
Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United
States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Charles Batson challenges his convictions for distributing crack cocaine in violation of 21 U.S.C. § 841(a). On appeal, Batson argues that the trial court erred in allowing the prosecution to present a surprise alibi rebuttal witness. He further contends that he was prejudiced by tainted identification testimony. Finding no merit in Batson's contentions, we affirm the judgment of the district court.

I.

On June 6, 1995, Naval Criminal Investigative Service Agent Michael Shipp made an undercover buy of 30 grams of crack cocaine from Charles Batson. The transaction took place at Midway Park, North Carolina. During the drug buy, which took approximately 20 minutes, Agent Shipp sat in a chair while Batson stood. Agent Shipp's notes described Batson as being a black male with a Jamaican accent, approximately 6' 1", and weighing 185 pounds. The notes further observed that Batson had light facial hair and a gold tooth, and wore jeans, brown boots, an Indiana Pacers shirt, and wire-rimmed glasses.

On August 1, 1995, Agent Shipp bought another 25.3 grams of crack cocaine from Batson. During this twenty minute transaction, Agent Shipp stood next to Batson. At this meeting, Agent Shipp determined that Batson was only 5' 9" tall and about 160 pounds rather than the 6' 1", 185 pounds he had earlier reported.

On July 26, 1995, between the first and second drug buys, an ATF Special Agent showed Agent Shipp a photograph of Batson. The photo was of a clean-shaven black male standing against a chart that measured his height as 5' 9" tall. Shipp readily identified the photo-

graphed man as the one from whom he had purchased crack cocaine on June 6.

Batson was arrested on August 30, 1995 and was indicted on two counts of distributing crack cocaine. At trial, Batson called Julia Baches as an alibi witness. She testified that Batson had lived with her in Brooklyn, New York from mid-March to August 6 or 7, 1995, and that he had never spent a night away from home during that period. She also claimed that Batson was with her on June 6 and August 1.

On the night before the last day of Batson's trial, the government discovered that a police officer, Robert Toth, had stopped Batson in Jacksonville, Florida on May 25, 1995. During this encounter, Officer Toth had recorded Batson's name, social security number, and his address in Brooklyn. Furthermore, Toth was able to identify Batson in a photo line-up. Because Toth was previously unknown to the government, his name had not been included as a potential rebuttal witness in response to Batson's notice of alibi prior to trial.

The government called Toth to the stand on the last day of the trial to refute Julia Baches' testimony. Defense counsel objected to his testimony on the ground that the defense had not received notice of the witness. The court overruled this objection, noting that the government had only recently become aware of the witness. Defense counsel, who did not request a continuance, was permitted to conduct a thorough voir dire of Toth before he testified.

On December 21, 1995, Batson was found guilty on two counts of distribution of crack cocaine. He was sentenced to 210 months imprisonment.

II.

Batson contends that the district court erred in allowing the testimony of Officer Toth, arguing that the government failed to give notice, at least 10 days before trial, that Toth would be called as an alibi rebuttal witness. See Fed. R. Crim. P. 12.1(b). We find this contention meritless.

3

As an initial matter, there is a strong argument that Rule 12.1 does not apply in this case. On its face, the text of Rule 12.1(d) contemplates the exclusion only of "the testimony of any undisclosed witness offered by [the prosecution] as to the defendant's absence from or presence at, the scene of the alleged offense." In this case, Toth's testimony did not concern Batson's "absence from or presence at" the June 6 and August 1 drug sales. Rather his testimony established, contrary to Baches' assertions, that Batson had left Brooklyn during the period of time he lived with her.

Assuming, however, that Rule 12.1(d) applies to this situation, the district court did not abuse its discretion in finding good cause to permit the testimony of Officer Toth. Fed. R. Crim. P. 12.1(e); see United States v. Brock, 833 F.2d 519, 522 (5th Cir. 1987). As the district court noted, given the government's late discovery of the witness, notice was provided the defense as promptly as possible. Defense counsel was permitted to conduct a thorough voir dire of the witness. Furthermore, the defense chose not to seek a continuance or even a recess to prepare for the witness. "Generally . . . the failure to ask for a continuance [is] an indication that defense counsel was himself satisfied he had sufficient opportunity to use the evidence advantageously." United States v. Osorio, 929 F.2d 753, 758 (1st Cir. 1991). Given these circumstances, the district court did not abuse its discretion in allowing Officer Toth's testimony.

III.

Batson next maintains that Agent Shipp's identification testimony was tainted by his viewing of Batson's photograph between the drug buys on June 6 and August 1. We disagree. In this case, there is little to support the claim that Shipp's viewing of Batson's photograph on July 26 affected the reliability of his eyewitness identification of Batson at trial; and "reliability is the linchpin in determining the admissibility of identification testimony . . . ." Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Shipp met with Batson twice, each time for twenty minutes. After these meetings, Shipp described Batson in detail. Furthermore, when Batson was arrested on August 30, Agent Shipp again readily identified him in a line-up as the individual who had sold him crack on June 6 and August 1. "In fact, every indication is that [Agent Shipp] could have identified[Batson] just as easily had

4

[he] not seen the photograph." <u>United States v. Burgos</u>, 55 F.3d 933, 942 (4th Cir. 1995).

Batson makes much of the fact that Agent Shipp's estimates of Batson's height and weight changed after the second drug buy. Shipp's original estimate might be explained, however, by the fact that during the first meeting, Shipp was sitting in a chair while Batson was standing, or by the fact that Batson was wearing baggy clothing during that first meeting. At the second drug transaction, Shipp stood next to Batson, and was thus able to get a more accurate estimate of Batson's size. In any event, these questions go to the weight of Shipp's testimony, not its admissibility. <u>See United States v. Causey</u>, 834 F.2d 1277, 1285 (6th Cir. 1987). Given that Shipp's testimony was admissible, the jury was free to give it however much or little weight it felt was proper.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

5