**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Theodore C. LARSON,
Defendant-Appellant.**

No. 77–1783.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1978.

Decided Aug. 2, 1978.

Franklyn M. Gimbel, Milwaukee, Wis., for defendant-appellant.

Thomas E. Martin, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT and CUMMINGS, Circuit Judges, and EAST, Senior District Judge.*

EAST, Senior District Judge.

*THE APPEAL:*

The appellant Theodore C. Larson (Larson) appeals his judgment of conviction and suspended sentence under a term of probation entered by the District Court on July 29, 1977 for violation of 18 U.S.C. § 656[1] (willful misapplication of bank funds with intent to defraud). We note jurisdiction under 28 U.S.C. § 1291 and affirm.

*PROCEEDINGS IN DISTRICT COURT:*

On November 23, 1976, the grand jury indicted Larson on one count of alleged violation of § 656. Larson entered a plea of not guilty and moved for a bill of particulars and a dismissal of the indictment for its failure to allege that he acted with intent to defraud the State Bank of Elkhorn, Elkhorn, Wisconsin (Elkhorn Bank). On January 12, 1977, the grand jury returned a superseding indictment alleging that on December 24, 1973:

"THEODORE C. LARSON,

"being the President of the State Bank of Elkhorn, Elkhorn, Wisconsin, whose deposits are insured by the Federal Deposit Insurance Corporation, with intent to injure and defraud said member Bank, willfully and knowingly did misapply and cause to be misapplied Fifty Thousand and no/100 Dollars ($50,000.00) of the monies, funds, and credits of said bank, entrusted to its custody and care, in that THEODORE C. LARSON, by reason of

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. 18 U.S.C. § 656:

"§ 656. Theft, embezzlement, or misapplication by bank officer or employee

"Whoever, being an officer . . . of . . any . . . [federally] insured bank, . . willfully misapplies any of the moneys, funds or credits of such bank of any moneys, funds, assets or securities intrusted to the custody or care of such bank, . . . shall be fined . . . or imprisoned . . . ."

his position, and by virtue of the power, control, and authority he had over the monies, funds, and credits of said bank as its President, did place and cause to be placed $50,000.00 of said bank's monies, funds, and credits in a non-interest bearing account in the First National Bank of Janesville, Janesville, Wisconsin, thereby causing the said State Bank of Elkhorn, Elkhorn, Wisconsin, to lose the use, control and interest from said deposit to the detriment of said State Bank of Elkhorn, Elkhorn, Wisconsin, converting the use of said monies to his own benefit, in that said THEODORE C. LARSON was enabled to obtain a loan in the amount of $40,000.00 from the First National Bank of Janesville, Janesville, Wisconsin, at preferential terms because said $50,000.00 in monies, funds, and credits of the State Bank of Elkhorn, Elkhorn, Wisconsin, were so placed in the said First National Bank of Janesville, Janesville, Wisconsin.

"All in violation of Title 18, United States Code, Section 656."

On February 11, 1977, the District Court ruled that the allegations of the superseding indictment rendered Larson's motions for a bill of particulars and a dismissal moot and denied the motions.

Larson was put to trial by a jury. At the close of the Government's case in chief, Larson moved for a dismissal of the cause. The District Court denied the motion. At the close of the evidentiary case and before submission to the jury, Larson moved for a directed verdict of acquittal for the reason that all of the evidence presented was not sufficient to present a jury question as to whether Larson intentionally misapplied bank funds with intent to defraud the bank. The District Court denied the motion. A jury verdict of guilty was returned and the District Court entered the judgment of conviction and suspended sentence.

The District Court later denied Larson's post-trial motions for judgment of acquittal notwithstanding the verdict, a new trial and arrest of the judgment.

*ISSUES ON REVIEW:*

We deem the dispositive issues on review to be:

1. Whether the allegations in the superseding indictment constituted a crime against the United States.

2. Whether the evidence was sufficient to support the jury finding that Larson acted with intent to injure or defraud.

3. Whether the District Court properly instructed the jury on the element of intent and on reasonable doubt.

*FACTS:*

We find no useful purpose in delineating the testimony of some 19 trial witnesses and believe the following summary of the stipulations and other evidence to be sufficient for the purposes of disposition.

At the time of the alleged offense, Larson duly held the office of President of the Elkhorn Bank. The deposits of that bank were insured by the Federal Deposit Insurance Corporation. Among the bank's assets and credits was a Wisconsin law-required reserve, a non-interest bearing account with the American City Bank of Milwaukee, Wisconsin (the American City Bank).[2] On December 24, 1973, Larson obtained a $40,000 personal loan from the First National Bank of Janesville (Janesville Bank), which loan was personally authorized by Daniel Hake, President of the Janesville Bank. Larson obtained the loan at seven percent interest—a more favorable rate than was given for comparable loans—by depositing funds of the Elkhorn Bank as a compensating balance. This account drew no interest or compensation in the form of services. The loan was, however, collateralized by some of Larson's nonlisted stock in the Elkhorn Bank.

On the same day Larson obtained his personal loan, $50,000 was transferred from the reserve account with the American City Bank to a dormant non-interest bearing

2. The parties agree that Wisconsin law requires state chartered banks to keep 12 percent of

their deposits in reserve non-interest bearing accounts in other banks.

reserve account in the Janesville Bank. The transfer was made at the direction of Larson and by an Elkhorn Bank employee, who was without authority to make the transfer. Fourteen months later a bank examiner first questioned the propriety of Larson's personal loan and he immediately directed that the Elkhorn Bank's funds be transferred to an authorized reserve account in another bank. Within 30 days thereafter, Larson prepaid his personal loan.

## DISCUSSION:

### Issue 1:

We conclude the material elements of the alleged crime to be:

1. The federal jurisdictional element which was admitted;
2. The fact of Larson's official capacity with the Elkhorn Bank which was admitted; and
3. Larson's misapplication of the funds and credits of the Elkhorn Bank while acting willfully and knowingly with intent to injure or defraud that bank.[3]

■ Traditionally, § 656 has been used to prosecute bank officers for actually taking or converting bank funds to their own or the use of a third party. However, recently it has been held that it is willful misapplication within the meaning of the statute to knowingly use an interbank deposit as a compensating balance for a loan at a preferential rate to an officer of the depositing bank, with an intent to injure and defraud one's own bank. *United States v. Mann*, 517 F.2d 259, 267–68 (5th Cir. 1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976), and *United States v. Brookshire*, 514 F.2d 786, 788–89 (10th Cir.

---

**3.** *Ramirez v. United States*, 318 F.2d 155, 157–58 (9th Cir. 1963), teaches:

"Section 656, Title 18 U.S.C., is a 1948 revision of former section 592, Title 12 U.S.C. Although the words 'intent to injure or defraud' were contained in section 592, they were omitted from section 656 . . . . .
"'. . . .'
"Despite the omission of these words from the text of section 656, it is clear that 'an

---

1975). *See also* Note, *Maintenance of Compensating Balance Indictable Offense under 18 U.S.C. § 656*, 27 Mercer L.Rev. 1183 (1976).

We hold that the superseding indictment alleged a prosecutable crime against the United States under § 656.

### Issue 2:

■ A reckless disregard by a bank official of his bank's interest is sufficient to establish the requisite intent to defraud. *United States v. Stevison*, 471 F.2d 143, 145 (7th Cir. 1972), *cert. denied*, 411 U.S. 950, 93 S.Ct. 1933, 36 L.Ed.2d 411 (1973). *United States v. Mann*, 517 F.2d at 270 n.7; *Giragosian v. United States*, 349 F.2d 166, 168–69 (1st Cir. 1965). *Cf. United States v. Kaczmarek*, 490 F.2d 1031, 1035 (7th Cir. 1974). Stated differently,

"[n]either the phrase 'willfully misapplies' within § 656, nor its counterpart, 'intent to injure and defraud,' read into § 656 by the courts . . . ., necessarily connotes an evil desire or a motive of causing injury. Deliberate misapplication of bank funds suffices, even if—as is surely the norm—the actor is motivated purely by his own self-interest or that of another and wishes no harm to anyone." *United States v. Killian*, 541 F.2d 1156, 1159–60 (5th Cir. 1976). (Footnote omitted).

The question of one's intent is not measured by a psychic reading of his mind but by the surrounding facts and circumstances; *i. e.*, circumstantial evidence. It takes only common sense and good conscience under the facts recited above to reach a permissible inference that Larson deliberately misapplied the Elkhorn Bank's funds to further his personal interest.

intent to injure or defraud' remains an essential element of any crime under that statute and accordingly must be proved; . . . ."
*See also United States v. Stevison*, 471 F.2d 143, 145 (7th Cir. 1972), *cert. denied*, 411 U.S. 950, 93 S.Ct. 1933, 36 L.Ed.2d 411 (1973); *United States v. Mullins*, 355 F.2d 883, 886 (7th Cir.), *cert. denied*, 384 U.S. 942, 86 S.Ct. 1465, 16 L.Ed.2d 540 (1966).

The fact that the $50,000 Larson ordered deposited to the reserve account at the Janesville Bank was transferred from a like account at the American City Bank does not preclude a finding of the requisite intent. "It is not necessary for the Government to allege or prove that the bank actually suffered any loss as a result of defendants' actions." *United States v. Mann*, 517 F.2d at 268; *United States v. Brookshire*, 514 F.2d at 790. A review of the cases establishes that the requisite intent may be made out if the defendant's acts created the possibility that the bank would suffer injury. *E. g., United States v. Beran*, 546 F.2d 1316, 1321–22 (8th Cir. 1976), *cert. denied*, 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977), citing *United States v. Bevans*, 496 F.2d 494, 500 n.4 (8th Cir. 1974); *United States v. Killian*, 541 F.2d at 1160; *United States v. Tokoph*, 514 F.2d 597, 603–04 (10th Cir. 1975); *Golden v. United States*, 318 F.2d 357, 361–62 (1st Cir. 1963), quoting *Galbreath v. United States*, 257 F. 648, 656 (6th Cir. 1918).

Although the deposit was formally made to a reserve account, thereby prohibiting the receipt of interest on the funds, $50,000 was such a small percentage of the Elkhorn Bank's reserve requirement as to permit the inference that its continued designation of reserve status with the Janesville Bank was a smokescreen. By placing the $50,000 in the dormant noninterest bearing account with the Janesville Bank, the Elkhorn Bank was deprived of control over the money and, more importantly, any interest or income in other forms which the money could have otherwise generated for the bank.[4] This clearly was not in the best interest of the Elkhorn Bank. Moreover, in making the deposit in December, 1973, Larson exceeded the authority granted by the Board of Directors in two respects. First, at the

time he directed the transfer of the money, the Janesville Bank was not an authorized depository for more than $50,000 in reserve funds and $25,000 in such funds was already on deposit there. Second, testimony of two members of the Board of Directors indicated that reserve deposits at the Janesville Bank were made only in consideration of compensation in the form of services. This was corroborated by Jack Palmer, a federal bank examiner, who testified that the initial reserve deposits totalling $25,000 were justified by the provision of courier and computer services for the Elkhorn Bank's installment loan account. Palmer found no such justification for the additional deposit of $50,000.[5]

We conclude the evidence before the jury, viewed in the light most favorable to the Government, was sufficient to support the jury's finding of Larson's willful misapplication of the funds and credits of the Elkhorn Bank with intent to defraud. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and *United States v. Tucker*, 552 F.2d 202, 210–11 (7th Cir. 1977).

*Issue 3:*

■ Larson's first objection is that the instructions as to willful misapplication of funds and intent to defraud were incorrect in that they could have permitted the jury to convict based on "mere negligence." We reject the argument. In fact, the District Court gave virtually the same instruction as Larson sought. In part, the Court instructed:

"The wilful misapplication of bank funds, which is condemned by Title 18 United States Code, Section 656, means something more than irregular or negligent

---

**4.** Gregg Dery, a federal bank examiner, testified that the $50,000 would have been able to earn $4,000 to $7,000 during the 14 months it was in the Janesville Bank.

**5.** Larson could not be sure that the Board of Directors would subsequently agree to raise the reserve deposit limit for the Janesville Bank, especially if they were put on notice of Larson's personal interest in securing an increase.

In any event, even if the Directors' January, 1974 action raising the reserve deposit limit was to be viewed as an approval of Larson's action, it would not be a defense since the misapplication preceded it. *United States v. Acree*, 466 F.2d 1114, 1118 (10th Cir. 1972), *cert. denied*, 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973).

use of bank funds. It means the unlawful use of the [bank's] monies . . . done wilfully with a specific intent to injure or defraud the bank." [6]

The District Court's further definitions on willfulness and specific intent were also correct. The objection is meritless.

■ Larson's second objection is that the District Court refused to give a portion of his requested instruction on reasonable doubt. Specifically, he complains that the District Court merely instructed that the prosecution had the burden of proving each element of its case beyond a reasonable doubt and refused to further define reasonable doubt by giving the "two hypothesis" explanation he requested. Essentially, the two hypothesis definition sought is that if the evidence can support two conclusions, one guilt and the other innocence, the jury must acquit.

This argument is also meritless. In *United States v. Lawson*, 507 F.2d 433, 441 (7th Cir. 1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975), this Circuit held "that the failure to give a defining instruction of 'beyond a reasonable doubt,' even though an acceptable instruction has been tendered, should not be the basis for reversing an otherwise fairly conducted trial." The Court then went on to explain why the best policy might be to refuse to define reasonable doubt. *Id.* at 441–44. So even if, as Larson argues, the two hypothesis instruction would have been acceptable under *United States v. Shaffner*, 524 F.2d 1021 (7th Cir. 1975), it was not necessary.

We have perused the District Court's instructions as a whole and find them not only without prejudicial error but eminently fair. *Shaffner*, 524 F.2d at 1023 n.2.

The judgment of conviction and sentence appealed from is affirmed.

AFFIRMED.

**6.** In this regard it is noted that the District Court also instructed that the jury must find that the defendant acted knowingly and that

"[a]n act was 'knowingly' done if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

"The purpose of adding the word 'knowingly' was to insure that no one would be convicted for an act done because of mistake, or accident, or other innocent reason."