**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-5028**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DONALD TAYLOR,

Defendant - Appellant.

**No. 08-5039**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CEDRIC TAYLOR,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge.  (5:07-cr-00102-F-1; 5:07-cr-00102-F-2)

Argued:  January 29, 2010          Decided:  March 22, 2010

Before MOTZ, GREGORY, and DAVIS, Circuit Judges.

Affirmed in part, vacated in part, modified in part, and remanded by unpublished opinion. Judge Davis wrote the opinion, in which Judge Motz and Judge Gregory joined.

———————

**ARGUED:** Wayne Buchanan Eads, Raleigh, North Carolina; Marilyn G. Ozer, MASSENGALE & OZER, Chapel Hill, North Carolina, for Appellants. Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Circuit Judge:

Appellants Donald and Cedric Taylor were convicted on drug trafficking and witness tampering charges and were sentenced accordingly in the United States District Court for the Eastern District of North Carolina. They now appeal their convictions and sentences. Together, they assert that the district court erred in (1) denying their motions for judgment of acquittal on the witness tampering charge; (2) sentencing them to 240 months on the witness tampering charge; and (3) failing to provide an adequate explanation for their sentences. In addition, Cedric Taylor alleges error in the district court's admission of laboratory reports without the testimony of the lab technician, and Donald Taylor alleges error in the district court's refusal to apply a sentencing guidelines adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). We conclude that the district court provided an inadequate explanation of the sentence imposed on Cedric Taylor. Accordingly, we vacate the sentence and remand for further proceedings as to him. Furthermore, we find, as the government concedes, that the lower court erred when it imposed 240-month sentences on the witness tampering charge. In all other respects, for the reasons explained within, we affirm.

The Appellants were charged in a six-count superseding indictment for conspiracy to distribute and possess with intent to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 846 (Count One); distribution of more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Three) (Donald Taylor only); tampering with a witness through threats of physical force, in violation of 18 U.S.C. § 1512(a)(2)(C) (Count Four); attempting to kill a witness, in violation of 18 U.S.C. § 1512(a)(1)(C) (Count Five); and attempting to kill a witness in retaliation, in violation of 18 U.S.C. § 1513(a)(1)(B) (Count Six). Donald Taylor pleaded guilty to the drug counts (Counts One through Three) and not guilty to the tampering counts (Counts Four through Six); Cedric Taylor pleaded not guilty to all counts. The jury convicted Donald Taylor on Count Four (witness tampering through threats) and found Cedric Taylor guilty of Counts One (drug conspiracy) and Four. The jury found both Appellants not guilty of Counts Five and Six.

The district court sentenced Donald Taylor to 360-months of imprisonment on the drug counts and 240-months imprisonment on witness tampering, the sentences to run concurrently. The district court sentenced Cedric Taylor to concurrent 240-month terms of imprisonment on the drug and tampering counts. The

4

defendants filed timely notices of appeal and we have consolidated the appeals. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 3742.

## II.

In 2006, the Cumberland County Bureau of Narcotics and the United States Drug Enforcement Administration launched a drug distribution investigation in Fayetteville, North Carolina. The investigation revealed that, along with others, Donald Taylor ran a drug distribution ring in Cumberland County.

## A.

The Appellants do not challenge the sufficiency of the evidence as to their narcotics convictions; accordingly, we briefly summarize that portion of the government's proof. The government's principal trial witness was Bobby Bunnells, a drug dealer and police informant.[1] He testified that in 2000, he began

---

[1] Several other drug dealers and drug users testified at trial. According to Thomas Hanson, between October 2003 and March 2004, he sold cocaine or crack to Donald Taylor between 13 to 16 times and he always saw drug traffic at the Taylors's residence. Torrey Robinson testified that, between 2002 and 2005, he sold Donald Taylor cocaine and crack more than 20 times. He sold Donald Taylor drugs in front of Cedric Taylor's residence while Cedric was present. He also witnessed Cedric Taylor sell drugs. Ronnie Bowman testified that he bought crack from Donald Taylor several times, and sold Cedric Taylor marijuana. Bowman also witnessed Cedric Taylor selling drugs. Camilo Garza purchased crack from Donald and Cedric Taylor in 2005. Garza testified that lots of drug users stayed at the Taylors's residence and used drugs there.

5

to sell 300 to 500 pounds of marijuana per month. In 2001, he met Donald Taylor, who had purchased a trailer home from Bunnells's father. That same year, Donald Taylor began to purchase marijuana, and eventually (in 2003), cocaine and crack cocaine from Bunnells. Bunnells supplied Donald Taylor with crack cocaine on a weekly basis until the middle of 2004. During drug deals at Donald Taylor's trailer, Bunnells observed significant traffic going to the Taylor residence to purchase drugs. He saw buyers knock on the trailer door and request crack, and he saw Donald Taylor's girlfriend sell them crack. Bunnells also witnessed Cedric Taylor assisting Donald Taylor in his drug enterprise. He saw Cedric Taylor work the door at the trailer, weigh the crack, and hand the crack to customers.

Bunnells stopped selling drugs to Donald Taylor in mid-2004 after he repeatedly saw police in the vicinity. When law enforcement officers arrested Bunnells in 2006, Bunnells began to cooperate in drug investigations as a confidential informant. In this capacity, he sought to buy drugs from Donald Taylor.

Having been out of the drug trade for some time, Bunnells employed his niece, Crystal Powell, to reconnect him with Donald Taylor. Powell was an admitted crack addict; she spent time at the Taylor residence in 2006 and early 2007, sometimes staying with them and sometimes prostituting herself to them for drugs. Powell facilitated contact between Donald Taylor and her uncle,

and Donald Taylor agreed to meet Bunnells and sell him crack. Bunnells and Donald Taylor met on September 14, 2006, whereupon Donald Taylor (who had no drugs readily available) took Bunnells to another drug dealer's residence, purchased two and a quarter ounces of crack with $1400.00 supplied to Bunnells by investigators, and gave the crack to Bunnells when they arrived back at Taylor's residence. On October 23, 2006, Bunnells made a second purchase, this time of four and a half ounces of crack (a so-called "Big 8") from Donald Taylor for $4000.00 in government funds. Cedric Taylor was present during the second transaction.[2]

## B.

The witness tampering and attempted murder charges arose from events occurring several months after the above-described drug purchases by Bunnells from Donald Taylor. Based on the following evidence, the government theorized that the Appellants learned that Bunnells was cooperating with investigators and undertook to kill him.

---

[2] During the investigation, agents executed at least two search warrants at properties controlled by the Appellants. On August 4, 2006, they executed a search warrant at a trailer used as a dope house, seizing an armored vest, a loaded gun, digital scales, and fliers advertising the sale and distribution of crack by Donald Taylor. On January 23, 2007, they executed a search warrant at Donald Taylor's residence. Both Donald and Cedric were present when the warrant was executed. Agents found the residence littered with drug paraphernalia. They also seized firearms and ammunition.

Crystal Powell, Bunnells's niece, spent significant time with Donald and Cedric Taylor, staying overnight at their trailer on many occasions, sharing meals with them, and doing drugs with them. Of relevance to the witness tampering charges against the Appellants, her testimony focused on one particular night when she accompanied Cedric Taylor to meet a drug dealer named Bobby Faircloth. She testified that during the meeting, Faircloth repeatedly winked at Cedric Taylor and stated that the trailer park was "hotter than a firecracker," but that "as long as you're selling to the police, they can't fuck with you." J.A. 309.[3]

---

[3] Powell testified as follows:

> We pulled up there and Buddy Faircloth was sitting there in a van and looked at Cedric and he winked his eye and he said three times in a row, he said Velton's Trailer Park is hotter than a firecracker, he said, then he goes, but as long as you're selling to the police they can't fuck with you, and he winked his eye, and he said it three times in a row, as long as you're selling with the police they can't fuck with you and winked his eye. He done that three times.
>
> And then we left and got back to the trailer and I think they started putting two and two equals four, you know what I'm saying? [Donald Taylor] started showing me some text messages from my uncle and I think he realized what my uncle was doing.
>
> And I'm not going to sit here and say, it looked like I was doing it with my uncle because there was times – there was money being borrowed and the whole while my uncle was not allowed out of his yard at eight o'clock, and even I didn't even know that, but I was being the middle person. They were coming back to

After speaking with Faircloth, Cedric Taylor returned with Powell to the Taylors's trailer. Soon after their arrival, Donald Taylor showed Powell text messages from Bunnells — messages that caused her to believe that he knew that Bunnells was working with investigators. One text message concerned Bunnells asking Donald Taylor to do another drug sale.

At approximately the same time that the Taylors showed Powell the text messages, the Taylor brothers, their cousin "Big G," and a man named Harold Clark, each of whom was also at the trailer, were saying things like, "all you have to do is pull the trigger, pull the trigger." J.A. 310. Powell also testified that Donald Taylor indicated that he was willing to do "whatever it took" to avoid jail, and that Harold Clark was walking around the trailer with a gun, plastic handcuffs, and duct tape.

In due course, Donald Taylor instructed one of the men present to take Crystal Powell from the trailer, noting that he did not care what the man did with Powell, and requiring only that he be informed of where he took her. The man dropped Powell off near a friend's residence, at her direction, and she called Bunnells immediately and told him that his cooperation had been exposed.

me, I was going to meet, and then bringing the money back to them.

J.A. 309 (brackets added).

Bunnells testified that on the very next day, January 20, 2007, after a chance encounter near a car wash, Cedric Taylor and another man engaged in a vehicle chase with Bunnells, firing shots at Bunnells's truck. Bunnells escaped by driving his truck into a field, abandoning his vehicle, and fleeing into a wooded area. Thereafter, Bunnells contacted the case agent and told him about the incident, but did not identify Cedric Taylor as the shooter until, a day or so later, he had sent his mother and father out of town.

Bunnells took Powell to meet with investigators two days later, and Powell advised them of what had transpired on the night that she went with Cedric Taylor to visit Bobby Faircloth.[4]

## C.

The claim of trial error raised by Cedric Taylor relates to evidence elicited from Agent Gary Owens of the Cumberland County Bureau of Narcotics. Owens testified about Bunnells's cooperation and, specifically, his purchase of crack cocaine from Donald Taylor in September and October 2006. During Owens's

---

[4] The defense argued at trial that Bunnells had concocted the story of the shooting. In support of that contention, Donald Taylor presented the testimony of Christopher Crocker, a drug dealer who had been incarcerated with Bunnells. Crocker testified that Bunnells told him that he had lied to the authorities about who shot-up his truck. According to Crocker, Bunnells stated that he had told the authorities that Donald Taylor was responsible, but in fact, Bunnells admitted to Crocker, he had shot-up the truck himself. On cross-examination, the government sought to impeach Crocker through evidence of his own aborted plea agreement and his prior silence about Bunnells.

10

testimony, the prosecutor offered into evidence the laboratory reports generated as a result of the tests performed on those drugs. Neither counsel objected, and the district court admitted the reports.

## III.

As mentioned, prior to trial, Donald Taylor pled guilty to the drug conspiracy and drug distribution counts and not guilty to the three witness tampering, retaliation, and attempted murder counts. At trial, the jury convicted him on the charge of witness tampering by threat of force, but it found him not guilty on the retaliation and attempted murder counts. The jury found Cedric Taylor guilty of drug conspiracy and witness tampering by threat of force and not guilty on the retaliation and attempted murder counts.

The Appellants timely filed and renewed motions for judgments of acquittal as to the witness tampering charge. The district court denied the motions, finding specifically that the evidence presented at trial was sufficient to support the jury's verdict that the Appellants' intent in threatening and intimidating Powell was to intimidate and deter Bunnells from communicating with the authorities about the Appellants' drug trafficking activities.

11

IV.

We first address the Appellants' assertions of error in connection with the denial of the motion for judgment of acquittal as to the witness tampering charge and the admission of the lab reports. We then address the sentencing issues they raise.

A.

The first issue is whether the district court erred in denying the Appellants' motion for judgment of acquittal under Fed. R. Crim. P. 29 as to the witness tampering charge. The Appellants argue that the government failed to present sufficient evidence for a jury to find beyond a reasonable doubt that their threatening and intimidating behavior toward Powell was intended to intimidate or threaten Bunnells and to deter him from communicating with law enforcement. The Appellants contend that any inference of such an intent is too attenuated and speculative to support their convictions. They contend that the only reasonable inference from the evidence is that they were attempting to gain information about and/or confirmation of Bunnells's police connections. The government responds that sufficient evidence supported the jury's finding that Appellants' threatening and intimidating actions directly toward Powell was intended to deter Bunnells and to cease his cooperation and communication with investigators.

12

We review this claim de novo. See United States v. Ryan-Webster, 353 F.3d 353, 359 (4th Cir. 2003). We must sustain a guilty verdict that, viewing the evidence in the light most favorable to the prosecution, is supported by "substantial evidence." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. To that end, we "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Cameron, 573 F.3d 179, 183 (4th Cir. 2009) (citation omitted).

The statute under which the Appellants were convicted prohibits, in relevant part, "us[ing or attempting to use] physical force or the threat of physical force against any person . . . with intent to . . . hinder, delay, or prevent the communication by any person to a law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense. . . ." 18 U.S.C. § 1512(a)(2)(C)(alterations and emphases added). See generally United States v. Harris, 498 F.3d 278, 283 (4th Cir. 2007).

13

Here, the Appellants do not argue that they did not threaten the use of physical force against Powell, the "any person" referred to initially in the statute. Instead, they argue that the evidence failed as a matter of law to prove that they harbored the requisite intent, i.e., that the evidence failed to establish that they intended to "hinder, delay, or prevent" Bunnells, the second "any person" referred to in the statute, from communicating with law enforcement. We reject this contention.

Intent is most often proved through inferences from circumstantial and indirect evidence. This court has explained that, "as a general proposition, circumstantial evidence may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008) (alteration and quotation marks omitted). "Indeed, '[t]he question of one's intent is not measured by a psychic reading of [the defendant's] mind but by the surrounding facts and circumstances; i.e., circumstantial evidence.'" United States v. Bolden, 325 F.3d 471, 494 (4th Cir. 2003) (quoting United States v. Larson, 581 F.2d 664, 667 (7th Cir. 1978)). In light of these well established principles, the Appellants' argument lacks merit. The jury finding that the Appellants intended to "hinder, delay, or prevent the communication by any person to a law

14

enforcement officer . . . of information relating to the commission or possible commission of a Federal offense[,]" 18 U.S.C. § 1512(a)(2)(C), is properly supported by circumstantial evidence and reasonable inferences drawn from that evidence.

Here, the Appellants learned (or strongly suspected) that Bunnells was cooperating with investigators. The evidence showed that up until that time, there was no indication that they had acted in an intimidating or threatening manner toward Powell. She was a frequent and welcome visitor, purchased and used drugs in their presence, and often spent the night at their residence. The sudden and immediate change in their behavior and attitude toward Powell after the somewhat cryptic eye-winking and veiled oral warnings by Bobby Faircloth during his meeting with Cedric Taylor reasonably sheds light on the Appellants' intent. During the ensuing encounter back at the trailer, Donald Taylor stated emphatically within Powell's hearing that he was willing to do "whatever it took" to avoid jail time. And, one man walked around the trailer with a gun, handcuff ties, and duct tape, all the while stating, "all you have to do is pull the trigger, pull the trigger." J.A. 310.

In sum, the circumstantial evidence reasonably supports the inference that the Appellants' actions and statements during the encounter with Powell were intended to motivate Powell to advise her uncle that his continued cooperation and communication with

15

law enforcement about the Appellants' drug trafficking activity would be dealt with violently.[5] Contrary to the Appellants' contention, the inference of their intent was not speculative or irrational. We hold therefore that the government presented sufficient evidence to prove beyond a reasonable doubt that the Appellants acted "with intent to . . . hinder, delay, or prevent the communication by [Bunnells] to a law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." See 18 U.S.C. § 1512(a)(2)(C). The district court did not err in denying the motions for judgment of acquittal.

B.

Cedric Taylor contends that the district court erred when it admitted in evidence laboratory reports describing the results of drug analyses without the sponsoring testimony of the lab technician. He argues that admission of the lab reports violated his rights under the Confrontation Clause as interpreted by the Supreme Court in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009). The government argues that this claim has been waived by the failure of Cedric Taylor's counsel to lodge a contemporaneous objection to the admission of the reports at trial and that this court should not

_____

[5] The indictment charged the Appellants with aiding and abetting each other in the witness tampering counts.

16

notice "plain error" in the circumstances presented. We agree with the government.

As there was no objection to the admission of the lab reports, we review this claim for plain error. See Fed.R.Crim.P. 52(b); United States v. Olano, 507 U.S. 725, 732-35 (1993). As we have explained:

> Under plain error review, [Appellant] must show that (1) the district court committed an error; (2) the error was plain; and (3) the error affected his substantial rights, i.e., that the error affected the outcome of the district court's proceedings. United States v. Olano, 507 U.S. 725, 732-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); United States v. Hughes, 401 F.3d 540, 547-48 (4th Cir. 2005). Even if [Appellant] makes this showing, we should only notice the error if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Hughes, 401 F.3d at 555 (internal quotation marks and citation omitted).

United States v. Perkins, 470 F.3d 150, 155 n.7 (4th Cir. 2006).

In this case, we have no hesitation in concluding that any error in the district court's admission of the lab reports did not affect the outcome of the proceedings below. Cedric Taylor has neither argued nor ever raised any issue at trial or in the current appeal that the substances purchased by Bunnells from Donald Taylor in September and October 2006 were anything other than crack cocaine. Of course, Cedric Taylor was not charged with substantive drug violations in connection with those transactions. He was charged with knowing membership in a drug trafficking conspiracy involving more than 50 grams of crack

17

cocaine. Consequently, Cedric Taylor's sole claim on appeal is that the admission of the lab reports prejudiced his right to a fair trial by "documenting" that the <u>weight</u> of the crack cocaine in those transactions totaled 168.8 grams (approximately six ounces). <u>See</u> Appellants' Br. 35 (Asserting that "admission of the lab reports documenting 168.8 grams of cocaine base was extremely prejudicial, as this was the only evidence of quantity which appeared to be unquestionably reliable."); <u>id.</u> at 36 ("Compared to the testimony of the assorted drug users and dealers, the lab report must have seemed to the jurors to be unimpeachable.").

But this contention borders on the specious. The evidence that the multi-year drug trafficking conspiracy charged in Count One of the indictment involved more than a mere 50 grams of crack cocaine was simply overwhelming. <u>See</u> <u>supra</u> note 1. Furthermore, Bunnells fully described for the jury his purchases of crack cocaine mentioned in the lab reports using government funds, a total of $5,400.00 paid for approximately six and three quarter ounces. Bunnells testified that at the second of the two purchases, that of the "Big 8," Cedric Taylor was present. In short, the testimonial evidence shows conclusively that Cedric Taylor was not prejudiced by the admission of the lab reports of drug analyses admitted without objection during the testimony of Agent Owens.

18

V.

The Appellants have raised three issues related to sentencing. First, each argues that the district court committed procedural error when it failed to explain adequately the bases for the sentences it imposed. Second, Donald Taylor contends that the court erred in failing to apply the acceptance of responsibility adjustment at his sentencing. Finally, both contend that the court erred in imposing a sentence of 240 months on the witness tampering conviction. We address these assertions in turn.

A.

The Appellants argue that their sentences must be vacated because the district court failed to explain, consonant with our precedents, the bases for the sentences it imposed. The government counters that the district court conducted an individual assessment of Appellants' cases and, in context, adequately set forth its reasons for its sentences.

As we recently explained:

> We have addressed claims of procedural sentencing error in several recent cases. Relying on Supreme Court guidance, we have held that for every sentence-whether above, below, or within the Guidelines range-a sentencing court must "place on the record an 'individualized assessment' based on the particular facts of the case before it." United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009) (quoting Gall, 552 U.S. at 50, 128 S.Ct. 586). But we have also held that in explaining a sentencing decision, a court need not "robotically tick through § 3553(a)'s every

19

subsection," particularly when imposing a within-Guidelines sentence. United States v. Johnson, 445 F.3d 339, 345 (4th Cir. 2006). "[A] major departure [from the Guidelines] should be supported by a more significant justification than a minor one," Gall, 552 U.S. at 50, 128 S.Ct. 586, but an individualized explanation must accompany every sentence. See United States v. Johnson, 587 F.3d 625, 639 (4th Cir. 2009); Carter, 564 F.3d at 330.

United States v. Lynn, 592 F.3d 572, 576 (4th Cir. 2010). Importantly, "in determining whether there has been an adequate explanation, we do not evaluate a court's sentencing statements in a vacuum;" rather, "[t]he context surrounding a district court's explanation may imbue it with enough content for us to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly." United States v. Montes-Pineda, 445 F.3d 375, 381 (4th Cir. 2007).

1.

As to Donald Taylor, the district court fully heard defense counsel's arguments and allocution, and then it actually imposed the exact sentence that defense counsel requested: a sentence at the very bottom of the applicable guidelines range. Here is what counsel stated to the court:

> I've talked to Mr. Taylor about this, your Honor, and I'm sure the court's aware that when you start out with a base offense level of 38, you're automatically dealing with an enormous sentence. You add some of the offense characteristics we're at in this case, and, of course, it just goes up. I don't know that really anything else kind of matters. Any sentence that the court would give Mr. Taylor is a phenomenal amount of time in jail. I would submit to the court that a

20

> sentence at the bottom of that range, still being a
> phenomenal number, would be sufficient in this case to
> address the purposes of sentencing.

J.A. 974 (emphasis added). We have reviewed the record and find that counsel's request was reasonable under the circumstances. Although the district court said little to explain its own reasons for agreeing with counsel's assessment, under the circumstances, that is, "in context," not much needed saying. Lynn, 592 F.3d at 580 ("[Appellant's] attorney's arguments before the district court urged that court only to impose a sentence within the Guidelines range, which it did. Accordingly, we must affirm."). We discern no procedural error in the sentencing of Donald Taylor.

2.

We reach a contrary conclusion with regard to the sentencing of Cedric Taylor. During Cedric Taylor's sentencing hearing, the district court listened to defense counsel's arguments regarding Cedric Taylor's age, education, lack of criminal convictions, and his relationship with his co-defendant brother. Defense counsel also argued that the evidence against, and the apparent involvement of, Cedric Taylor, was slight in comparison to that of his brother. Counsel urged the district court to impose a ten year sentence, stating:

> I would submit, your honor, that an appropriate
> sentence as to Cedric Taylor would be the mandatory
> minimum of 120 months; that the sentencing guidelines

21

is advisory, and you're not required to give him a guideline sentence if the court is so inclined; that based on the circumstances of his life, the facts that were going on with his brother and his involvement in these offenses that he's been accountable for, that the mandatory minimum is the appropriate sentence and ask that you give him 120 months.

J.A. 956-57. At the court's invitation, the Assistant United States Attorney responded to the above argument in this fashion:

[We] request, your Honor, a sentence within that guideline range as found applicable by the court. Of course, to vary downward the court must be able to articulate reasons for such a variance. In this case, the circumstances of the case rather than crying out for a downward departure for this defendant I think would do the opposite. It was a vicious case. It was a violent case. Under the influence of his brother or not, an appropriate sentence in this case would be that found in that advisory guideline range.

J.A. 957. Then, again at the court's invitation, counsel for Cedric Taylor was given the final word, as follows:

If it was so bad, Mr. Donald Taylor was indicted one year before his brother Cedric was. And if the court can look at the file, only about a month before Donald Taylor comes to trial is his brother indicted for all of these heinous offenses that everyone had known about. Basically the government inserted Cedric Taylor's name into three or four counts of the indictment. If they had all this knowledge--you've heard the testimony of these witnesses: "I've been debriefed half a dozen times and I never once mentioned the name Cedric Taylor. "When was the first time you mentioned his name? "A week before when we were getting ready for trial." The discovery has three places where Cedric Taylor's name is mentioned. One is on the porch, one he gave a user amount of cocaine, and one from Crystal Powell that says Cedric delivered some undescript [sic] amount of cocaine. That's it. And now he's going to get 20 years based on these witnesses. One hundred and twenty (120) months is sufficient in Cedric Taylor's case.

22

J.A. 958. The court then offered Cedric Taylor an opportunity to speak and thereafter, immediately imposed a twenty year sentence (slightly above the very bottom of the applicable guidelines range of 235-293 months) as follows:

> The court finds the basis for the findings contained in the pre-sentence report credible and reliable and therefore the court adopts those findings. Based on those findings, the court has calculated the imprisonment range prescribed by the advisory sentencing guidelines and has considered that range, as well as other relevant factors set forth in the advisory guidelines, and those set forth in 18 United States Code, section 3553(a). Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that Cedric Taylor is hereby committed to the custody of the bureau of prisons to be imprisoned for a term of 240 months on each count to be served concurrently. Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years. This term consists of a term of five years on count one and a term of three years on count four, all such terms to run concurrently.

> *    *    *    *

> Inasmuch as the range exceeds 24 months, the court has imposed a sentence near the bottom of the range because there are no unaccounted for aggravating factors and because of the defendant's lack of criminal convictions.

J.A. 959-62 (emphasis added).

As the above excerpt from the Cedric Taylor sentencing hearing shows, while the district court commendably allowed counsel a full opportunity to make vigorous arguments to aid the court in determining an appropriate sentence, the court never explicated its reasons for imposing a twenty year sentence. The

23

court's failure is especially striking in light of the non-spurious bases identified in detail by counsel for a variance sentence, to which the court never adverts. Certainly, the case involved facts that might warrant a sentence within the applicable guidelines range. Nevertheless, we are wholly unable to assess the reasonableness of the sentence because the district court failed to state the reasons for the sentence it imposed.

The government's reliance on the portion of the court's statement, which we have underscored, that "the court . . . imposed a sentence near the bottom of the range because there are no unaccounted for aggravating factors and because of the defendant's lack of criminal convictions," is unavailing. In prefacing those remarks with the statement, "[i]nasmuch as the range exceeds 24 months," the court makes it clear that it is complying with the statutory requirement that it state "the reason for imposing a sentence at a particular point within the [guidelines] range." 18 U.S.C. § 3553(c)(1).[6] A district court's

---

[6] Section 3553(c)(1) provides as follows:

(c) Statement of reasons for imposing a sentence.—The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--
(1) is of the kind, and within the range, described in subsection (a)(4) and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range . . . .

explanation of its selection of a sentence <u>within</u> a sentencing guidelines range, as required by 18 U.S.C. § 3553(c)(1), may well provide, in an appropriate case, the "'individualized assessment' based on the particular facts of the case before it," as required by <u>Gall</u>, 552 U.S. at 50, and <u>Carter</u>, 564 F.3d at 330. The explanation provided here, however, falls considerably short of that standard.

Accordingly, for the reasons set forth, we vacate the sentence imposed on Cedric Taylor and we remand for resentencing.

B.

Donald Taylor contends that, because he entered guilty pleas to the drug conspiracy and drug distribution counts, the district court erred when it refused to apply the acceptance of responsibility adjustment pursuant to U.S.S.G § 3E1.1(a). In his brief on appeal, Donald Taylor argues, in part, that the adjustment clearly would be warranted if this court vacates his conviction on the witness tampering charge. As explained above, we affirm that conviction. But he also contends that, even if the witness tampering conviction is affirmed, a two-level reduction in the adjusted offense level is appropriate because he: (1) pled guilty to all drug counts brought against him; (2)

---

18 U.S.C. § 3553(c)(1).

25

accepted responsibility for his "drug offense-related action;" and (3) failed to challenge the presentence investigation report, which included evidence of drug weights, admitted due to "hearsay statements by potentially unreliable and non-credible co-conspirators."

The government argues that the district court did not err in refusing to grant defendant an acceptance of responsibility adjustment, in part because the drug counts and the witness tampering counts were grouped in Donald Taylor's guidelines calculation. We agree. The grouping of the drug counts of the indictment with the witness tampering count in the guidelines computation dictates that, though Donald Taylor pled guilty to the former counts, his conviction on the latter count precludes application of U.S.S.G. §3E1.1. United States v. Hargrove, 478 F.3d 195, 200 (4th Cir. 2007) ("[U]nder the terms of U.S.S.G. § 3E1.1, the defendant must . . . accept responsibility for the grouped guidelines counts in order to be eligible for the reduction in offense level for that particular offense.")(internal quotations omitted); United States v. Garrido, --- F.3d ---, 2010 WL 653439 at *5 (9th Cir. Feb. 25, 2010) ("We join our sister circuits in holding that, where a defendant accepts responsibility for all counts that are grouped under U.S.S.G. §§ 3D1.1-3D1.5, that defendant is eligible for the § 3E1.1 reduction for those counts, even if the defendant

has not accepted responsibility for other counts which, under §
3D1.1(b), are excluded from grouping.")(citing Hargrove). Thus,
the district court did not err in declining to apply the
acceptance of responsibility adjustment in calculating Donald
Taylor's guidelines.

C.

Finally, the Appellants contend that the district court
committed plain error when it imposed twenty year sentences on
the witness tampering convictions under 18 U.S.C. §
1512(a)(2)(c). Although neither defense counsel objected at
sentencing, the government agrees that at the time the
Appellants committed that offense in January 2007, the statutory
maximum penalty was ten years. (Congress amended the statute in
2008 to increase the penalty to a maximum of twenty years.) It
is clear in the record that the district court's imposition of a
twenty year sentence was inadvertent. Cf. Weaver v. Graham, 450
U.S. 24, 28 (1981) (discussing ex post facto clause); Lynce v.
Mathis, 519 U.S. 433, 441 (1997) (same). Although there was
extensive discussion (and agreement) among the parties and the
magistrate judge who arraigned the Appellants that the maximum
potential sentence was ten years on the witness tampering charge
under § 1512(a)(2)(c), the pre-sentence investigation report
failed to flag the change for the district judge.

27

In any event, we agree with the government that, under the circumstances, the error is amenable to correction as to Donald Taylor by a simple revision to and reissuance of the judgment and commitment order because the district court clearly intended to impose the applicable statutory maximum sentence and to run that sentence concurrently with the sentences on the drug counts. Of course, as to Cedric Taylor, we have ordered a new sentencing hearing. The district court shall correct its error as to the sentence under § 1512(a)(2)(c) in connection with the resentencing.

VI.

In conclusion, in appeal no. 08-5039, we affirm the convictions and vacate the sentence imposed on Cedric Taylor and remand with directions that a new sentencing hearing be held in accordance with the views stated herein. In appeal no. 08-5028, we affirm the convictions and modify the sentence imposed on Donald Taylor as to indictment count four and remand with directions that a revised judgment and commitment order be entered in accordance with the views stated herein. In all other respects, the judgments are affirmed.

AFFIRMED IN PART, VACATED IN PART,
MODIFIED IN PART, AND REMANDED

28